**WHITE et al. v. HAYNES.**

No. 11179.

Court of Civil Appeals of Texas. Dallas.
March 25, 1933.

Rehearing Denied April 29, 1933.

W. N. Coombes and H. J. Yarborough, both of Dallas, for appellants.

Harry P. Lawther, of Dallas, for appellee.

BOND, Justice.

This is a suit in the usual form of actions in trespass to try title to lands and for damages, and to establish the disputed line dividing lots Nos. 4, 5, and 6 in block 12 of the Houston & Texas Central Railroad addition to the city of Dallas, and fronting to the North on Paris street, owned by appellee, W. M. Haynes, and a parcel of land owned by appellant Mrs. Edna E. White, outside of said addition, and fronting to the South on Gibson street; also a disputed line dividing said lot No. 6 and lot No. 7 of the said railroad addition.

Appellee, as plaintiff, filed the suit against appellants, as defendants, and, in addition to the usual allegations incident to such a suit, pleaded title by possession under the five and ten-year statutes of limitation (Rev. St. 1925, arts. 5509, 5510); appellants answered by general denial, plea of "not guilty," and also pleaded title by possession for the said statutory periods of limitation.

The issues raised by the pleadings were sharply contested, and on the verdict of the jury favorable to the plaintiff on all issues submitted, except as to the line dividing said lot No. 6 and lot No. 7, judgment was rendered by the court in favor of the plaintiff against the defendants for the title to and possession of the small tract of land involved in this suit, and in favor of defendants, definitely establishing the boundary line between lot No. 6 and lot No. 7.

Appellants' first contention on this appeal is that, where a case is tried on special issues and verdict returned thereon at one term of the court, and no motion for judgment or further action of any kind is taken with reference to said case at that term, the trial judge is without authority to render judgment on the verdict at a subsequent term.

This case was tried at the January, 1931, term of the 14th district court in Dallas county; that term began by operation of law on January 5, 1931, and continued in session to April 13, 1931. The verdict of the jury on special issues was returned into court on April 2d, and on April 4th defendants filed a motion to set aside the verdict. The motion had not been acted upon, nor had the judge pronounced judgment on the verdict of the jury, or made any order in reference to the pending motion or verdict when the term of court expired.

At the succeeding April term, while defendants' motion to set aside the verdict of the jury was thus pending, the plaintiff, on April 20th, filed his motion for judgment on the verdict of the jury. On June 6th the court sustained the plaintiff's motion, and, in consequence thereof, pronounced the judgment complained of on this appeal. Thereafter, defendants filed two successive motions to set aside the judgment and grant them a new trial, thereby calling into action the proceedings of the court in hearing evidence in reference thereto, with the result that said motions were overruled.

The provisions of subdivision 28, art. 2092, R. S., a statute applicable only to certain counties of the state, and Dallas county is one in which the statute is applicable, reads as follows: "A motion for new trial filed during one term of court may be heard and acted on at the next term of court. If a case or other matter is on trial or in process of hearing when the term of court expires, such trial, hearing or other matter may be proceeded with at the next term of the court. No motion for new trial or other motion or plea shall be considered as waived or over-ruled, because not acted on at the term of court at which it was filed, but may be acted on at the succeeding term or at any time which the judge may fix or to which it may have been postponed or continued by agreement of the parties with leave of the court. All motions and amended motions for new trials shall be presented within thirty days after the original motion or amended motion is filed and shall be determined within not exceeding forty-five days after the original or amended motion is filed, unless by written agreement of the parties filed in the case, the decision of the motion is postponed to a later date."

Defendants' motion to set aside the verdict of the jury is, in effect, tantamount to a motion for a new trial, and it having been postponed by the provisions of the statute, without abatement, to the succeeding April term, the court retained jurisdiction of the motion and by force of it also had jurisdiction of all matters incident thereto. The judgment necessarily being correlative of and incident to said motion, we conclude that the court's jurisdiction to act on the motion also conferred jurisdiction on the court to render a judgment on the verdict. However, be that as it may, the verdict being interpretive of but a single conclusion, a motion for judgment was not essential to the court's power to render the necessary order carrying it into effect. Courts have the inherent power to correct, amend, and enter judgments nunc pro tunc to make the record speak the truth.

Appellants further contend that it is error to single out and isolate the evidence of one particular witness and attach to it a measure of finality, as such is on the weight of evidence, and gives undue prominence to said particular evidence, and is prejudicial to the party against whom said witness testified, and bases the assignment on special issue No. 1, submitted to the jury, which reads as follows: "Do you find from a preponderance of the evidence that the survey made by L. McKay establishes the true boundary line between the Railroad Addition and the Lane property?"

The L. McKay mentioned in the submitted issue was a witness in the case and gave evi-

dence material to plaintiff's contention as to the location of the boundary of the land in controversy. His evidence was in conflict with the testimony offered by defendants, and the jury should not have been called upon to determine the verity of McKay's testimony on a conflicting issue. The quoted question does not call for an ultimate fact finding, but it does, in effect, call upon the jury to determine as to whether L. McKay's survey established the boundary in dispute. It gave to his testimony undue prominence before the jury. It is well settled in this state that courts should never single out any particular testimony of any witness and give it such prominence. However, we conclude that the error is immaterial to the final disposition of this appeal, because of the further finding of the jury on the issue of limitation, which is the determinant feature of this litigation.

In response to special issues, the jury further found that appellee and his predecessors in title had peaceable and adverse possession for ten years of the small tract of land involved in this suit, paid taxes thereon, and claimed under deeds duly registered for five years continuously before the filing of this suit. There is no complaint as to the sufficiency of the pleadings and evidence to sustain the verdict, and this court is not authorized to disturb the findings.

■ Appellants assigned error on the court's charge wherein is defined "peaceable possession" and "adverse possession," presented in connection with the issues on limitation. The definitions given follow the provisions of the statute (Rev. St. 1925, arts. 5514, 5515), i. e., "'Peaceable possession' is such as is continuous and not interrupted by adverse suit to recover the estate," and "'adverse possession' is an actual and physical appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." The assignment is based on the ground that the charge quoted does not properly define the terms, and the failure of the court to define, in connection therewith, "actual and physical appropriation," "commenced under claim," "inconsistent," "hostile to the claim of another," "hostile," "claim," and "claim of another." Had the trial court burdened the charge with the definitions of the words and phrases contended for by appellant, it would have extended the definitions of "adverse possession" and "peaceable possession" to such an extent as that the jury would have been lost in the realm of distraction, and, instead of being an aid to them in an understanding of the terms it would have had the reverse effect. The definitions are sufficient to a full comprehension of the terms, as laid down by the Legislature of the state, and to extend them further, by defining the words and phrases employed, would lead to utter confusion. We conclude that the court did not err in the definitions given and, in refusing to extend them by defining the words and phrases used.

■ Appellants complained of the manner in which the issues of limitation were submitted to the jury. By special issue No. 3, the court inquired whether "W. M. Haynes and those under whom he claims, at any time before the filing of this suit, had peaceable and adverse possession of the property in controversy, described as 'first tract' in plaintiff's petition, for ten years occupying, using or enjoying the same."

By special issue No. 4, the court inquired whether "W. M. Haynes, and those under whom he claimed, at any time before the filing of this suit, had peaceable and adverse possession of the property in controversy, described as 'first tract,' in plaintiff's petition, for five years occupying, using or enjoying the same, and paying taxes thereon, and claiming under a deed, or deeds, duly registered."

Appellants' contention is that the issues (1) were on the weight of evidence, (2) multifarious, (3) the jury was required to go beyond the realm of the issues and the evidence and search the records to determine what "first tract" consisted of, and (4) neither of said issues called for an ultimate finding of fact. In these contentions we do not concur. The court's inquiries were raised by pleadings and fully supported by evidence. The ultimate conclusion for the determination of the jury was, whether appellee had had continuous, peaceable, and adverse possession of the property in controversy for the statutory periods of time for limitation to ripen into title, and had had such possession, actual and visible, occupying and using the same at any time prior to the institution of the suit. In response to further special issues, the jury affirmatively determined that appellants, and those under whom they claim, had never claimed or been in actual and visible possession of the "first tract" at any time prior to the filing of the suit, and never occupied, used, or enjoyed the same for a period of time to claim title by limitation, but, on the contrary, in response to the inquiries, affirmatively determined these issues in favor of appellee.

The reference to the property in controversy, described as "first tract," is not offensive to the rule prohibiting references in special issues. The "first tract" described in the petition is defined by course and distance, and, because of its complexity, its reference as "first tract" is not obnoxious to the evidence.

■ Appellants further contend that the jury and the trial judge were guilty of misconduct, in that, one member of the jury conferred with the court during deliberations on their verdict, and while no other member of the jury was present. The record discloses that, after the jury had retired to con-

sider their verdict, and after they had the issues under consideration, one of the jurors came into the courtroom with this note from the jury: "Is it a fact that Mr. L. McKay was appointed by the court as the official surveyor, and if so was he acceptable to both parties in the controversy?" The judge being on the bench and in open court told the juror to go back and tell the jury that he would send his answer by the sheriff. The judge, in open court, the attorneys for both parties being at that time in the courtroom, showed them the written request of the jurors, and asked them to agree upon the answer he should make. Upon their failure or refusal to do so, he then wrote the following and sent it by the sheriff to the jury: "Gentlemen of the jury: The court can only refer you to the evidence before you on this point."

No objection was made by appellants at the time (1) to the one juror leaving the jury room and delivering the jury's note to the judge in the courtroom, (2) to the judge sending the juror back to the jury with the information that he would send them his answer by the sheriff, (3) to the judge showing the attorneys for both parties the jury's written request, and (4) upon their failure or refusal to the judge sending to the jury by the sheriff his written answer to their request. The incident complained of occurred on April 2, 1931, and no complaint was made by appellant in reference thereto until the succeeding April term, when it was raised for the first time on motion for new trial.

We are aware of the well-settled rule that the trial judge may communicate with the jury in reference to the case only in open court. This rule is embodied in our statute (article 2197 et seq.) and upheld by the great weight of authorities. The observance of the statutory provisions is necessary and essential to the preservation of the sanctity of trials by a jury. When the trial court violates these provisions, by communicating with the jury otherwise than in the way provided by statute, error is committed, and, if the matter complained of has reference to the trial, vital and material to a final disposition of the case, we could not speculate on the injury, and reversal would necessarily follow. The communication here, however, was not in reference to the issues of limitation, on which we conclude this case should be affirmed; nor do we adhere that every communication outside of the issues of trial would reverse a case.

The nature and effect of incidents similar to that complained of in this case have been condemned by our appellate courts. However, this incident was not objected to at the time by appellants, and no motion was made to discharge the panel, and the complaint is made for the first time in a motion for a new trial.

It appears from the record that the communication between the trial court and the juror occurred in open court; all parties to the suit were present, and before the court had sent the message to the jury room the attorneys were advised of its nature. The attorneys observed the juror came into the courtroom and engaged in conversation with the judge; the judge called the attorneys to his bench and made overtures to them as to the kind of reply to make to the question submitted by the juror, failing in this prepared the message in open view and without complaint from either side. The jury deliberated on the case after said incident occurred, and appellants, remaining silent, suffered the verdict to be rendered against them, speculated on the result and lost.

If the incident was so damaging to the rights of appellants and invaded the sanctity of a jury trial, prejudicial to the complaining parties, they should have moved to discharge the panel, and failing to do so, in our opinion, waived the right to complain.

As was said by Chief Justice Jones, in the case of Scales v. Lindsay (Tex. Civ. App.) 43 S.W.(2d) 286, 290, dealing with a similar situation: "When this conduct was known to appellant and his attorney, before the court had read the charge to the jury and before the jury had been permitted to consider the case, appellant had two courses to pursue; he could move for a mistrial and the discharge of the jury because of this misconduct, or he could waive such misconduct, and take his chance with the alleged offending jurors [citing authorities]"; and by Justice Looney in Harmon et al. v. Ketchum (Tex. Civ. App.) 299 S. W. 682, 686: "The proper practice, under our view, to avoid the effect of a prejudicial matter of this nature occurring at the very beginning of the trial, is to move to discharge the panel. The complaining party should not be permitted to remain silent, speculate on a favorable verdict and hold in reserve his objection to be raised for the first time in a motion for a new trial. [Citing authorities.]"

The facts do not bring the case within the decisions cited by appellants. In City of Waco v. Craven (Tex. Civ. App.) 54 S.W.(2d) 883, after the jury had retired to consider their verdict, and after they had the matter under consideration about 24 hours, the jury, through the deputy sheriff, informed the trial judge of their desire to have him come to the jury room; the trial judge, out of the presence of and without the knowledge or consent of the parties, or their attorneys, entered the jury room and discussed with the jury, for a period some 3 to 5 minutes, the probability of the jury reaching a verdict in the case. The appellant, immediately upon learning of such conduct on the part of the trial judge, moved for a mistrial, and after the jury had returned its verdict in open court moved for a new trial. To the same

effect is the holding in Texas Midland R. R. v. Byrd, 102 Tex. 265, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137, Gerneth et al. v. Galbraith Foxworth Lbr. Co. (Tex. Com. App.) 38 S.W.(2d) 775, 776.

We conclude that, while the conduct of the court, in communicating with the jurors outside of the provision of the statute, was error, yet it was in reference to a matter immaterial to the final disposition of the case, and not being raised in time to avoid its effect, the assignment is overruled.

We have considered all assignments of error presented by appellants, and in consequence of what we have said this cause is affirmed.

Affirmed.

### On Appellants' Motion for Rehearing.

In appellants' motion for rehearing, assignment is made complaining of the conclusion in our original opinion in which we state that, "in response to special issues, the jury further found that appellee and his predecessors in title had peaceable and adverse possession for ten years of the small tract of land involved in this suit, paid taxes thereon, and claimed under deeds duly registered for five years continuously before the filing of this suit. There is no complaint as to the sufficiency of the pleadings and evidence to sustain the verdict, and this court is not authorized to disturb the findings," and insists that error as to the sufficiency of the evidence to support the verdict of the jury was assigned in appellants' motion for new trial in the court below, and brought to this court by appropriate assignments of error.

The record reveals that appellants' contention is correct. There appears in the back of appellants' brief verbatim copies of the assignments of error involving the issue as to the insufficiency of the testimony to support the judgment; however, there is no reference made in the body of appellants' brief touching such an assignment. Appellants predicate their appeal in the body of their brief on appropriate propositions germane to other assignments, but not involving the issue as to the verdict of the jury not finding support in the testimony.

We think that we were justified in our conclusion that, "there is no complaint as to the sufficiency of the pleadings and evidence to sustain the verdict, and this court is not authorized to disturb the findings." Evidently appellants, themselves, did not consider the assignments of sufficient probative force for a consideration by the appellate court; the assignments were not briefed and no point or proposition anent thereto was presented to reverse the judgment of the lower court. Briefs are intended to aid courts in reaching a correct decision and to dispose of the cause with the least labor and consumption of time, and where the parties to the suit do not consider the assignments in their brief, fail to call the court's attention to the point or proposition relied upon, to present matters in the record, and authorities, if any, to sustain their proposition, appellate courts are justified in concluding the assignments waived, unless some fundamental error appears.

An appellate court is not required to search the record for points of error, not briefed by appellant, to aid its conclusion. Where the party has suffered his case to be submitted, and the appellate court, in the exercise of its duty, considers all the points and propositions assigned in his brief and has reached a conclusion as to the disposition of the appeal, the appellant should not complain that the conclusion thus reached is not borne out by the apparently undisclosed and hidden assignment. However, we have again carefully reviewed the record in view of appellants' contention, and find the judgment of the court below is fully sustained by the pleadings and the evidence.

Appellants' motion for rehearing overruled.