TEXAS EMPLOYERS INS. ASS'N v. HAMOR.

No. 4647.

Court of Civil Appeals of Texas. Amarillo.

Oct. 5, 1936.

Rehearing Withdrawn Nov. 10, 1936.

Underwood, Johnson, Dooley & Huff, of Amarillo, and Cook, Smith, Teed & Wade, of Pampa, for appellant.

S. D. Stennis and John V. Osborne, both of Pampa, Will R. Saunders, of Fort Worth, and Jas. O. Cade, of Amarillo, for appellee.

HALL, Chief Justice.

This is a workman's compensation suit. Lee Hamor, appellee, sued the appellant, alleging in substance that on December 9, 1934, while an employee working for the Western Carbon Company in Gray County, he accidentally fell several feet down the stairs in his employer's building to a concrete floor, and sustained injuries which rendered him totally and permanently disabled.

The case was tried to a jury, submitted upon special issues, and resulted in a judgment in favor of plaintiff for the sum of $3,951.68. He was awarded compensation in a lump sum, together with interest and costs.

The case is submitted here by the appellant, Insurance Association, upon fifty-four assignments of error and thirty-seven propositions. The appellee's brief contains twenty-seven propositions.

Several of the appellant's propositions are multifarious, and others are not as specific as the statute requires, while others are subject to both defects.

By several propositions the appellant attacks the second special issue, which is as follows: "Do you find from the preponderance of the evidence that plaintiff sustained any personal injuries as alleged on December 9, 1934?"

This was assailed upon the ground that the court erred in referring to plaintiff's pleadings. While it is the better practice for the trial judge to so frame the issues as not to make reference to the pleadings, there are, however, exceptions to the rule. In a case where there are no facts alleged which are not supported by the testimony, a reference to the pleadings for identification does not constitute reversible error, and the rule is rarely, if ever, applied to workmen's compensation cases. Texas Employers Ins. Ass'n v. Burnett (Tex.Civ.App.) 77 S.W.(2d) 742; Texas & N. O. Ry. Co. v. Kelly, 98 Tex. 123, 80 S.W. 79; Andrews v. Wilding (Tex.Civ.App.) 193 S.W. 192 (error refused); Farmers' & Mechanics' Nat'l Bank v. Marshall (Tex.Civ.App.) 4 S.W. (2d) 165; White v. Haynes (Tex.Civ. App.) 60 S.W.(2d) 275.

The appellant contends that the evidence is insufficient to establish the amount of plaintiff's weekly wages, or the weekly wages of employees similarly employed by other companies in that vicinity, during the previous year. It must be admitted that the evidence upon that point is meager, but it was shown that after the injury and prior to the institution of the suit, the appellant paid plaintiff weekly wages for several weeks and without protest. If it be admitted that the proof is insufficient, appellant has admitted its liability to that extent, and is estopped by its action. Texas Employers' Ins. Ass'n v. Beckworth (Tex.Civ. App.) 42 S.W.(2d) 827; Texas Employers Ins. Ass'n v. McNorton (Tex.Civ.App.) 92 S.W.(2d) 562; Casualty Reciprocal Exchange v. Berry (Tex.Civ.App.) 90 S.W. (2d) 595; Texas Employers' Ins. Ass'n v. Bateman (Tex.Civ.App.) 252 S.W. 339; So. Surety Co. v. Eppler (Tex.Civ.App.) 26 S.W.(2d) 697.

Complaint is made of the court's special issues Nos. 9 and 13, which are as follows:

"9. Do you find from the preponderance of the evidence that the injuries suffered by the plaintiff in an automobile accident on July 11, 1931, did not contribute to plaintiff's total incapacity, if any, following December 9, 1934?"

"13. Do you find from the preponderance of the evidence that the injuries suffered by the plaintiff in an automobile accident on July 11, 1931, and the injuries, if any, suffered by the plaintiff while working for the Palmer Carbon Company, did not contribute to plaintiff's permanent incapacity, if any, following December 9, 1934?"

The objection to these issues is that the court assumes that plaintiff has sustained total incapacity. They are not subject to the objection.

The rule is that when a case is submitted, either upon a general charge or

special issues, the charge, whether general or special, must be considered and construed as a whole. 41 Tex.Jur. 1215, § 351; Id., 1243, § 374.

Both issues, in referring to total incapacity, use the saving words, "if any." Speer on Special Issues, § 201, says: "It frequently happens that an instruction or issue that would otherwise be obnoxious to the rule forbidding interference with the jury's right to find facts and incidentally to weigh evidence, becomes harmless by some qualifying clause such as the familiar saving words 'if any'. This is the stereotyped language intended to negative the intention of inserting or implying the fact to be.

We must assume that the jury considered the charge as a whole in answering special issues Nos. 6 and 7, inquiring whether the injuries, if any you have found, sustained on or about December 9, 1934, resulted in total incapacity to plaintiff, and whether the total incapacity, if any, of the plaintiff was permanent, in the affirmative. It is the duty of this court, in construing the charge, to consider it as a whole. So doing, we find no error in the particular complained of. New Amsterdam Casualty Co. v. Harrington (Tex.Civ.App.) 11 S.W.(2d) 533; Texas Employers' Ins. Ass'n v. Henson (Tex.Com.App.) 48 S.W.(2d) 970.

By its eighth proposition the appellant complains of the court's definition of "injuries sustained in the course of employment." As we understand it, the definition is in compliance with the words of the statute, and has been approved in numerous cases. Speer on Special Issues, 87; Royal Indemnity Co. v. Hogan (Tex.Civ. App.) 4 S.W.(2d) 93, and authorities cited.

In determining whether error has been committed, we must consider the assignment of error, the proposition or propositions following it, and also the statement following the proposition. Under this rule the fourteenth proposition is multifarious, uncertain, and indefinite, and is therefore not entitled to consideration. The proposition is referable to four assignments of error, and is as follows: "The trial court had no right to submit the case in a manner which was on the weight of the evidence on account of weaving into *special issues* submitted the suggestion or impression that appellee's alleged accident, if hurtful, resulted in more than one injury, for while appellee's

evidence raised the inference of two injuries, that is, a hip injury and a spinal injury, yet appellant's evidence made a direct issue of both such alleged injuries, and the manner of submission adopted by the trial court was on the weight of the evidence."

The statement following this proposition sets out issues numbered 2, 3, 6, and 17. The objections made to the first three of this list is that the second issue is calculated to make the impression that plaintiff's accident, if hurtful, resulted in more than one injury. The third and sixth issues also use the word "injuries," and are objected to for that reason. The seventeenth issue is: "Do you find from a preponderance of the evidence that the injuries, if any you found plaintiff sustained, on or about December 9, 1934, resulted in partial incapacity to the plaintiff?"

We think these objections are hypercritical. Issues must be submitted in the light of both the pleadings and evidence. The plaintiff alleged that as a result of falling down the stairway he suffered a broken femur and an injury to his spine. All the testimony in his favor tends to support the idea that he suffered both injuries as a result of that fall. While the doctors differed as to whether the X-ray pictures introduced in evidence showed these injuries, there is nothing to indicate that he ever received them at separate times or other places. Moreover, all of the testimony tended to show that his total permanent incapacity resulted from the injuries as alleged, and the jury so found. No good purpose could have been subserved by separating the injuries and submitting special issues as to each. If error, it is harmless because neither injury is classed by the statute as specific.

The appellee alleged that the accident and the injuries happened on Sunday. The court gave the following definition: "By the term 'employee' as used in this charge, or any special charges or issues that may be given you herein, is meant every person in the service of another under any contract of hire, express or implied, oral or written, except one whose employment is in the usual course of the trade, business, profession or occupation of his employer."

Appellant objected to this definition because it was stated in such broad and

sweeping terms that even an employee who worked contrary to the Sunday law might appear and would probably be understood by the jury to be an employee in the sense thereof, particularly since said definition contained a specific exception which would be assumed to be the only exception, and the same does not purport to rule out a workman engaged contrary to the Sunday laws.

In response to special issue No. 5, the jury found that the work, if any, being done by the plaintiff for the Western Carbon Company on December 9, 1934, was a work of necessity. This response shows that they did not assume that the exception stated in the definition was the only one. The definition of the term "employee" is in accord with the definition found in the numerous decisions of the courts. One might be an employee of the assured, but would be barred from recovering if, under his contract, he obligated himself to work in violation of the Sunday law. The court therefore properly submitted the matter separately.

In this connection the court charged the jury that the term "necessity" meant not an absolute, unavoidable, physical necessity, but rather an economic and moral necessity, and further that the necessity might grow out of or be incident to a particular trade or calling. The objection to this part of the court's charge is that it was in the nature of a general charge. This contention is overruled.

The definition of "necessity" is in accord with the definitions given by the courts. Maryland Casualty Co. v. Marshall (Tex.Civ.App.) 14 S.W.(2d) 337; Casualty Reciprocal Exchange v. Stephens (Tex.Com.App.) 45 S.W.(2d) 143. There is no merit in the further contention that the court should have defined the words "economic" and "moral." Jurors are supposed to be men of ordinary intelligence, and the rule which requires the court to define legal and technical terms does not require trial courts to convert their charges into a common school dictionary and define definitions except in rare instances. Ft. W. & D. C. Ry. v. Rowe (Tex.Civ. App.) 69 S.W.(2d) 169; Ft. Worth Structural Steel Co. v. Griffin (Tex.Civ.App.) 63 S.W.(2d) 887; White v. Haynes (Tex. Civ.App.) 60 S.W.(2d) 275.

The court's definition of "partial incapacity" is correct. Texas Employers' Ins. Ass'n v. Brock (Tex.Com.App.) 36 S.W.(2d) 704.

The appellant insists that the court improperly assumed the existence of controverted facts in eight or ten of the issues submitted in the main charge. This contention must be sustained. As illustrating the error complained of, the ninth issue is: "Do you find from the preponderance of the evidence that the injuries suffered by the plaintiff in an automobile accident on July 11, 1931 did not contribute to plaintiff's total incapacity, if any, following December 9, 1934?"

It is clear that the court assumes that the plaintiff was injured in an automobile accident on July 11, 1931. The defendant insisted and introduced some testimony of plaintiff's activities in the way of taking part in a jumping contest, doing hard manual labor for third parties, and also introduced testimony of two surgeons to the effect that he was malingering and his claimed injuries were a fake.

In several issues the court assumed that the plaintiff at one time worked for the Palmer Carbon Company where he sustained injuries. This issue was also sharply contested. The claimed injury while working for the Palmer Carbon Company was prior to the injury of December 9, 1934, upon which this action is based; but the court assumed that he was injured while working for the Palmer Carbon Company, when the jury could easily have found that such former injury, if in fact he had been injured as alleged, was a contributing cause to his then condition. He testified that he commenced working for the Palmer Carbon Company in the latter part of November, 1933, and was injured on December 14, 1933. He claimed that at the time he was injured he was moving a carbon vehicle used in carrying packages of carbon black, and as he walked along the runway the wind swerved the vehicle around and mashed him between it and the banister of the railing. He says there was no eyewitness to this alleged accident. When confronted with his statement and claim in which the injuries he says he sustained are described as "contused, mangled and disrupted muscles, ligaments, tendons, nerves and blood vessels of and about the back, hips and all adjacent organs, particularly the urinary tract, bowels and stomach, shock to the body and nervous system, and frac-

ture of the vertebra and hip bones," his explanation was that his attorney, Mr. Godwin, had him sign a blank compensation claim form, and that the description of his injuries was afterwards written in above his signature, and that his lawyer made them up. That claim was made in the name of George L. Hamor. In this action he sues as Lee Hamor. He settled the first claim for $400 in April, 1934. In May he went to work for other parties, building bridges and keeping up the roads for Carson county in 1934, which was admitted to be heavy labor, and indulging in a jumping contest with another employee in a gravel pit. The record does not inform us whether he won or lost in that contest.

Doctors who examined him as stated said he was malingering; that there was nothing wrong with him other than his mind. The appellant's theory with reference to his injuries alleged to have been sustained while he worked for the Palmer Carbon Company is that his entire claim was fictitious and his injuries were feigned, and the evidence is sufficient to cast a suspicion upon the genuineness of his claim. There is a striking similarity between the claim filed in the first case and the claim upon which this action is based. The court assumed the truth of the contention, which was clearly upon the weight of the evidence, when the jury might have found that the Palmer Carbon Company transaction never in fact existed—at least to the extent of the injuries claimed, or, in fact, any injuries.

One Burkett was called as a witness for plaintiff and testified, over appellant's objection, that he knew a man named Yeary who called to see him about a month before the trial, and in the conversation Yeary asked him about working for the Huber Carbon Company at the time plaintiff was injured at the Palmer Carbon Company, and he told him that Hamor was staying with him at the time; that Yeary then wanted to know if witness had seen Hamor since he got hurt the last time, and witness replied that he had, and that Yeary then asked him to make a written statement to the fact that Hamor limped at the Palmer plant just like he did at that time. Witness told him he didn't see it that way; that he didn't see Hamor limp, and finally Yeary said: "I tell you what, Burkett. If you will sign a statement to the fact that Hamor limps now just like he did at the Palmer plant, I will guarantee

you $50.00 if you will testify in their behalf." The witness said he refused to do so, and that he was a cousin of plaintiff.

■ This testimony was objected to upon numerous grounds, chiefly because no predicate had been laid which would make appellant chargeable with the acts and conduct of Yeary, and that if Yeary made any such statement it had not been shown that he was within the scope of any employment by the appellant, or was acting in the course of his duty, and further that appellee had no pleading to support or authorize such testimony, and it was not offered in rebuttal. The purpose of this testimony was, of course, to charge the appellant with having employed Yeary to bribe witnesses to testify in its behalf, and should not have been admitted over the objections made. Even if Yeary was an employee and agent of plaintiff, the rule, as stated in 2 American Juris., Agency, 72, § 87, is: "Nor can the authority (of such agent) to do an illegal or an act that is contrary to sound public policy be implied from the authority given to do a lawful act."

There was undisputed evidence that Yeary was an independent investigator not regularly employed by appellant. The testimony of Burkett, as set out in substance above, was not given in chief, but he was called only in rebuttal, and only a few minutes before the trial ended.

■ The appellant's bill of exception No. 5 shows that one H. H. Banzet was called as a witness for appellee in rebuttal, and he testified that Yeary called upon him at his home in White Deer and mentioned the appellee, Hamor, and asked witness if he knew Hamor. When answered in the affirmative, he asked witness if the latter had ever seen Hamor without a cane. When told that witness had not, Yeary then stated that "he had plenty of money to give me if I had seen him walk without a cane, and I told him I hadn't and to keep his money in his pocket." This testimony should not have been admitted over the objections urged.

■ One Laman was called by appellant, who testified in appellant's favor. Plaintiff, in rebuttal, testified that he had a conversation with Laman at White Deer shortly before the trial, the substance of which was that Laman said he had been laid off the day before and needed some money and that if Mr. Saunders would

pay his father-in-law his claim or judgment he could get the money that way, referring to a compensation claim that one Gerapy, the father-in-law of Laman, had against an insurance company represented by appellee's counsel, Mr. Saunders; that Laman came back the next day and resumed the conversation, and without saying what he (appellee) told Laman, he claimed that Laman said, "Mr. Saunders will be God dam sorry." His testimony was offered for the purpose of impeaching Laman. No predicate was laid in the examination of Laman, and the conversation is purely hearsay as to the defendant. Its admission was error.

The appellee had testified that he was in bed three weeks after his alleged injuries of December 9, 1934, completely bedridden during the first two weeks, and only able to sit up in bed the third week; that he was not out of bed at any time during said three weeks.

The appellant called Mrs. Thurlow, a neighbor residing at Skellytown, who testified that Hamor came to her house for aid just before Christmas of 1934. He knocked at the back door about 10 o'clock in the morning and was excited. He was not walking with a cane. He requested witness to come over to his house, saying he had hurt his wife accidentally. She went along with him, both going in a hurry, and when she reached Hamor's home she found Mrs. Hamor. The appellant then sought to interrogate the witness further, the substance of the proffered testimony being that witness noticed Mrs. Hamor's unusual condition; that her face had been hurt, her nose was in a terrible condition; it was all out of shape and crooked, the center of it bent, looking like it had been broken; just bent all out of shape, and was black and blue; that she was in bed and crying. Witness further testified that she put cold cloths on the injured nose; that Mrs. Hamor complained of the back of her head hurting, and witness applied cold cloths to the back of her head, and put her to bed; that Mrs. Hamor told witness Hamor had hit her with his fist; that Hamor was not present, but that Mrs. Hamor pulled witness down over her and whispered it to her; that Mrs. Hamor whispered to witness about three or four minutes after witness arrived; that a doctor was finally called.

 The objection made to the testimony was that it was irrelevant, immaterial, and prejudicial. This is equivalent to no objection unless sufficient reasons are stated why the proffered testimony is irrelevant, immaterial, and prejudicial. Capitol Hotel Co. v. Rittenberry (Tex.Civ.App.) 41 S.W.(2d) 697. The testimony is not sufficient to clearly show that this incident occurred during the three weeks when plaintiff claims to have been bedridden and wholly incapacitated. Plaintiff's explanation of the incident was that he and his wife had a kind of playful scuffle over a broom. The record does not show the size and weight of the broom, but we may assume from the fact that it dislocated her nose, put her eye in mourning, and was so serious as to require the services of a doctor, that the testimony was material upon the issue of plaintiff's claim that he was bedridden and entirely helpless. We will pass the matter without further comment, since the case is to be tried again, and its relevancy may be more clearly shown, though we are strongly inclined to the opinion that it was admissible as res gestæ.

For the errors pointed out, the judgment is reversed and the cause remanded.