### SOUTHERN UNDERWRITERS v. STUBBLEFIELD.

#### No. 5043.

Court of Civil Appeals of Texas. Amarillo.
June 19, 1939.

Rehearing Denied July 10, 1939.

Henry D. Akin, Claude Williams, and Benbow, Saunders & Holliday, all of Dallas, for plaintiff in error.

Smoot & Smoot, of Wichita Falls, for defendant in error.

FOLLEY, Justice.

This is a workmen's compensation suit, this being the second appeal of this case. The first opinion is reported in Tex.Civ. App., 108 S.W.2d 557. We refer to that opinion for a statement of the basic facts which were substantially the same in both trials. To this statement we shall, in the course of this opinion, add such variations from the former record as are material to this appeal. In this second trial the claimant has offered some additional evidence in regard to his injury and there was also additional medical testimony from both parties.

The Southern Underwriters, plaintiff in error, appealed from an award of the Industrial Accident Board to the District Court of Wilbarger County, Texas, and was originally the plaintiff in the trial court. The defendant in error, John W. Stubblefield, filed his answer and cross-action seeking affirmative relief. This answer was amended twice before the first trial. After the former judgment was reversed and remanded by this court and before the second trial the Southern Underwriters filed a motion to be nonsuited without prejudice to the cross-action of Stubblefield, which motion the trial court grant-

ed. The second trial, which is now before us for review, was predicated upon the third amended original answer and cross-action of Stubblefield alleging injuries to his back, shoulder, head and jaw while in the course of his employment. Such injuries were alleged to have totally and permanently incapacitated the claimant. They were further alleged to have occurred on or about May 31, 1935, in substantially the same manner as set out in our former opinion.

In reply to this third amended answer and cross-action the Southern Underwriters filed a general demurrer and general denial and specially denied that Stubblefield gave notice of his injury within the time, manner and form prescribed by law. It further specially denied that a valid claim had been filed in the case, in that the purported claim showed upon its face that the same was not made for a sum of money sufficient to confer jurisdiction upon the district court. The answer further denied that a valid award had been made by the Industrial Accident Board in that the purported award did not show upon its face any authority from such Board nor that the same was made or acted upon by the members of the Board. The Southern Underwriters further pleaded that any sum of money paid by it to the claimant was through error.

Upon a trial before a jury the following findings were made: (1) That at the time of the accident the claimant was working for the insured employer, Sam Walton; (2) that the claimant was injured at such time by being struck by a portion of the drilling machinery in connection with which he was working; (3) that he suffered an injury to his jaws, shoulders, arm and back while in such employment; (4) that such injury was accidental; (5) that he was then engaged in the course of his employment; (6) that such injury resulted in the total incapacity of the claimant; (7) that such injury did not result in partial incapacity; (8) that the percentage of such partial incapacity was total incapacity; (9) that the incapacity of the claimant will be permanent; (10) that such incapacity will not be temporary; (11) that the claimant had worked in the employment in which he was working at the time of the injury substantially the whole of the year preceding; (12) that the average weekly wage received by the claimant during substantially the whole of the year preceding the injury was $35; (13) that fixed in the manner which seems just and fair to both parties, the average weekly wage of the claimant was $35; and (14) that manifest hardship and injustice will result to the claimant if the compensation due him is not paid in a lump sum. Upon this verdict judgment was rendered vacating the award of the Industrial Accident Board and decreeing that the claimant have and recover upon his cross-action in the sum of $7,187.77, with interest from date at 6% per annum and costs of suit. The amount of the judgment was based upon 60% of a weekly wage rate of $35, the court allowing the maximum compensation rate of $20 per week, deducting $188.60 theretofore paid to the claimant by the insurance company and the legal discount for the lump sum settlement.

 In its first two propositions the insurance company attacks the jurisdiction of the trial court, asserting that the claim filed before the Industrial Accident Board did not contain a demand for any particular amount of money nor sufficient data to show an amount within the jurisdiction of the district court and that the pleadings of the claimant were not sufficient to confer jurisdiction upon the district court. The claimant's cross-action alleged facts entitling him to an award of $20 per week for 401 weeks. Therefore such petition clearly states a cause of action of which the district court had jurisdiction. As far as the claim filed with the Board is concerned we think it is immaterial to the question of jurisdiction of the trial court. In view of the holding in the case of Booth v. Texas Employers' Ins. Ass'n, Tex.Com. App., 123 S.W.2d 322, 324, these assignments must be overruled. In such case it is held: "The rule as to suits filed by an injured employee is that the amount of the claim before the Industrial Accident Board is immaterial upon the issue of jurisdiction of the court selected to review the award, the only essential jurisdictional connection between the claim for compensation before the board and the suit to set aside the award being the identity of the injury of which complaint is made."

 By its third proposition the insurer assigns error on the part of the trial court in admitting in evidence the certified copy of the award of the Industrial Accident Board and assuming jurisdiction of the cause for the reason that the copy was not signed by any member of the Board nor

in any way shown to be an act of a quorum of said Board. Such certified copy of the award was introduced over the certificate of the secretary of such Board and under the official seal of the Industrial Accident Board. The certificate recites that the award was a correct copy of one of record in the Department. The insurance company pleaded the award as a basis for its suit in its original petition to set the same aside and filed with its petition a certified copy of the award. Under the provisions of section 8 of article 8307 of Vernon's Annotated Civil Statutes, such certified copies are made admissible in evidence. This assignment is therefore overruled. 22 C.J. 130; 17 Tex.Jur. 278 and 281; Traders & General Ins. Co. v. Holtzclaw, Tex.Civ.App., 111 S.W.2d 759.

■ The insurance company's fourth proposition is to the effect that the claimant's cross-action was subject to a general demurrer because it failed to allege the names and residences of the parties to the suit and in particular failed to allege that the insurance company was such a legal entity as is capable of being sued. All the matters about which the insurance company complained in this assignment were fully set out in its pleadings originally filed in an effort to set aside the award of the Board. Although the insurance company had been allowed to take a nonsuit on these pleadings, such action was sought for by the insurer, and granted by the court, without prejudice to claimant's cross-action. It has been held that even though the plaintiff has taken a nonsuit his petition may be looked to in aid of the defendant's cross-action seeking affirmative relief. McElyea et al. v. Parker, 125 Tex. 225, 81 S.W.2d 649; Northern Texas Traction Co. v. City of Polytechnic et al., Tex.Com.App., 236 S.W. 73; Jones et al. v. Wagner, Tex.Civ.App., 141 S.W. 280, writ refused. This assignment is, therefore, without merit.

■ The fifth proposition of the insurer deals with the alleged insufficiency of the evidence to support the verdict and judgment establishing total and permanent disability of the claimant. We discussed the injuries of the claimant in our former opinion and we do not deem it necessary to again enter into an extended discussion of the same. The claimant testified herein substantially to the same facts as in the former trial, the only material variations in his testimony being, in effect, that at the date of the second trial his disabilities were becoming more pronounced. W. H. Culver and Bill Sorrells, fellow workmen of the claimant, who were present at the time of the accident, corroborated the testimony of the claimant as to the nature and extent of his injuries at the time the same occurred. Both of these witnesses stated that the heavy revolving handle of the hoist lever struck the claimant on the jaw, back and shoulder repeatedly, knocked out his teeth, broke his jaw, rendered him unconscious and from his bloody condition left him looking like his throat had been cut. The claimant was also corroborated as to the severity of his injuries by the testimony of his physician, Dr. Duane Meredith, who also testified in the former trial. He stated that he had examined the claimant since the date of his injury some fifteen or twenty times, the last examination being about two weeks prior to the second trial. In his opinion, at the date of the second trial, it was definite that the claimant could never at any time, without an operation, use dental plates for the purpose of masticating his food; that the condition of his jaws made it impossible for him to eat solid foods; that he became more emaciated from time to time, which was due to lack of ability to eat proper food; that the X-ray examination now showed that the second lumbar vertebra of the claimant's spine is a half inch out of line with the other vertebra and very sensitive to pressure; that the claimant's spine was in an inflammatory condition such as to make his back stiff and prevent him from lifting; that the injury to his back alone will prevent him from doing manual labor or work in the future; and that his disabilities will be permanent. In view of this evidence it is our opinion that the testimony is sufficient to support the jury's finding that the incapacity of the claimant was total and permanent.

■■ The court defined "total incapacity" and "partial incapacity" as follows:

"The term 'total incapacity', as used in this charge, does not imply an absolute disability to perform any kind of labor, but means the person disqualified from performing the usual task of a workman in such a way as to enable him to procure and retain employment.

"You are charged that the term 'partial incapacity', as that term is used in this charge, means the ability to perform some of the duties of an ordinary workman. In

other words, any disability less than 100 per cent."

The insurance company, in its sixth and seventh propositions, asserts that these definitions were too limited and restricted. The court's definitions of these terms follow substantially the definitions heretofore approved by our courts and we overrule this assignment. Texas Employers' Ins. Ass'n v. Brock, Tex.Com.App., 36 S.W.2d 704; Traders & General Ins. Co. v. Porter, Tex.Civ.App., 124 S.W.2d 900, writ refused; United States Fidelity & Guaranty Co. v. Baker, Tex.Civ.App., 65 S.W.2d 344; Bankers' Lloyds v. Seymour, Tex.Civ.App., 49 S.W.2d 508; Texas Employers' Ins. Co. v. Ray et al., Tex.Civ.App., 68 S.W.2d 290; Texas Employers'. Ins. Ass'n v. Phelan, Tex.Civ.App., 103 S.W.2d 863.

■ In its eighth proposition the insurance company complains of the manner in which special issues seven and eight were submitted on the question of partial incapacity, asserting that construing both issues together the burden of proof was erroneously placed upon it. In this connection it should be stated that the claimant sought recovery in the alternative for partial and temporary incapacity only in the event his disabilities were found to be less than total and permanent. Whatever merit there might have been in this assignment at the time of the second trial has been since that date expressly removed by the Commission of Appeals in the case of Wright v. Traders & General Ins. Co., 123 S.W.2d 314. In that case where the claimant was seeking alternative recovery for the lesser disability it was held that the issue affirmatively phrased correctly submitted the claimant's theory of recovery and at the same time afforded the insurance company an affirmative submission of its ground of defense. Such case further held that the insurance company had the burden of establishing by a preponderance of the evidence its defense of partial incapacity. Such being true the insurance company's complaint in the instant case that the burden of proof was erroneously placed upon it on the issue of partial incapacity becomes immaterial since the burden is upon the insurer to establish partial disability as its defense to total incapacity. It therefore becomes unnecessary for us to determine whether or not the burden was placed upon the insurance company in regard to this issue.

■ The ninth and tenth propositions present the alleged error of the court in submitting issue numbers nine and ten inquiring whether the incapacity, if any, of the claimant as a result of the injuries would be permanent and would not be temporary, without informing the jury whether such issues were inquiring about total incapacity or partial incapacity. The ultimate fact sought for in these two issues was the duration of the incapacity regardless of whether it was total or partial, and we think the answer of the jury that the incapacity was total and not partial and that such incapacity was permanent and not temporary constitutes definite findings about which there could be no controversy as to their meaning.

■ The eleventh, twelfth and thirteenth propositions present the matter of the trial court's refusing to submit to the jury issues on whether or not the incapacity of the claimant was the result of arthritis or gonorrhoea or a combination of the effects of both, such diseases not being connected with the alleged injury. This assignment must be overruled for at least two reasons: first, the evidence does not raise the issues; and secondly, the insurance company did not sufficiently preserve the point in the trial court. The insurance company made no mention of such diseases in its answer to the claimant's cross-action, however, it has been held that a general denial is sufficient to raise similar defensive issues if supported by the testimony. Commercial Standard Ins. Co. v. Noack, Tex.Com.App., 62 S.W.2d 72; United States Fidelity & Guaranty Co. v. Baker, Tex.Civ.App., 65 S.W.2d 344. Dr. Meredith testified that he discovered some evidence of arthritis in the claimant's back after the first trial; that arthritis is a low inflammation that might be caused by discharge of pus into the blood from any center of infection, but was usually caused by inflammation arising from an injury; while it might arise from other causes such as bad teeth or bad tonsils, he had never known it to occur in the back from causes other than injuries; that while in rare occasions arthritis might be caused by centers of infection other than wounds, he found no evidence of infection in the claimant except the broken bones in his jaw; that he thought the broken jaws caused it as it would furnish a fertile field for the development of arthritis; that the blow to the claimant's back could have set up

the inflammation; that he had treated the claimant for a light case of gonorrhoea long after the injury and some six months previous to the second trial; that it lasted only ten days and was now out of the claimant's system; and that it would not affect the various parts of a person's system when given early treatment and eliminated from the system as was the case with the claimant. This testimony from Dr. Meredith was all there was on the point raised and we think it insufficient to support the contention that special issues should have been submitted presenting to the jury this theory of defense on the part of the insurer. Moreover, the insurer did not prepare and tender to the court any special issues incorporating this defense for submission to the jury. The insurance company merely made a general request in its objections to the court's charge, asking the court to prepare the issues on this question. This, we think, is insufficient to preserve the point on appeal. Texas & N. O. R. Co. v. Crow et al., Tex.Com.App., 123 S.W.2d 649; Gulf, C. & S. F. R. Co. v. Conley et ux., 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183; Harris v. Leslie, Chief Justice et al., 128 Tex. 81, 96 S.W. 2d 276.

The fourteenth, fifteenth and sixteenth propositions all pertain to the question of the proper wage rate, the first two raising the contention that the proper wage rate should have been arrived at under subdivision 5 rather than subdivision 1 of section 1 of article 8309, R.C.S. of 1925, and the sixteenth proposition presenting the additional point that if the wage rate should be arrived at under subdivision 1, the proper inquiry for submission to the jury should have been what was the average daily wage the claimant received rather than his weekly wage. The claimant pleaded fully and alternately subdivisions 1, 2 and 3 under section 1 of the above article, alleging the wage rate base in each case to be from $35 to $42 per week. The evidence on the question of wages actually received by the claimant was clear and without circumstances that would cast any doubt upon its accuracy. It was to the effect that he had worked for the same employer for a number of years and that his salary or wages had been from $35 to $42 per week; that when he worked in the field as a driller he got $5 per day or $150 per month, but when he worked out of the field he received $6 per day;

that the claimant knew the average wage paid in that locality for the class of work he was doing and that it was from $5 to $6 per day; and that he had worked for his employer for the whole of the year previous to his injury for a regular salary of $150 per month. This amount was corroborated by the testimony of a fellow employee working with the claimant.

The wage question in this case was submitted and answers returned under subdivisions 1 and 3 of section 1 of article 8309, but there was no conflict in the answers as both issues established $35 as the weekly wage of the claimant, 60% of which would be a sum in excess of the maximum compensation of $20 per week. The verdict of the jury fixed the weekly wage rate at the lowest amount either alleged or shown by the uncontroverted and corroborated testimony. The judgment, as above stated, was based upon the wage rate of $35 per week, or a maximum compensation rate of $20 per week. The insurance company's chief contention in connection with these propositions seems to be that the daily wage of the claimant in the sum of $5 should have been multiplied by 300 and the result divided by 52 to ascertain the weekly rate from which to take the 60% allowed under the law. The fallacy and unfairness of such contention was clearly demonstrated by Judge Critz in his opinion in the case of Texas Employers' Ins. Ass'n v. Storey et al., Tex.Com.App., 17 S.W.2d 458. The facts in that case were very similar to those in the instant case. In each case the claimant worked more than 300 days and the total earnings for the year were definitely known. In the Storey case the court held that the compensation should be computed under subdivision 3 of section 1 of the article, just as was done in the instant case. We therefore overrule this assignment. Texas Employers' Ins. Ass'n v. Suttles et al., Tex. Civ.App., 57 S.W.2d 624, writ refused and authorities therein cited.

The seventeenth, eighteenth and nineteenth propositions present the alleged error of the trial court in overruling the insurance company's objections to special issue number three of the court's charge inquiring if the claimant suffered an injury to his jaws, "shoulders", arm and back. The objection addressed to such issue was that it was not supported by the pleadings or the testimony and that it was multifarious. The contention of the in-

surer in regard to the insufficiency of the pleadings and the proof to support this issue is based upon the fact that the word "shoulders" instead of "shoulder" was used in the issue. It is apparent from the pleadings and the proof that this was a typographical error, which, if within the knowledge of the insurance company before its objections were filed to the court's charge, such knowledge was not clearly revealed to the trial court in the objections. At least, there was no specific objection calling this particular matter to the attention of the trial court. We therefore think the insurance company waived whatever merit might have been in this portion of the assignment. Isbell et al. v. Lennox et al., 116 Tex. 522, 295 S.W. 920. Moreover, there being no separate compensible injury claimed in this case, the ultimate fact sought for in this issue was whether the claimant had suffered an injury, and the words "to his jaws, shoulders, arm and back" merely followed to identify the injury. This being true it is our opinion the issue was not multifarious. Texas Employers' Ins. Ass'n v. Hamor, Tex.Civ. App., 97 S.W.2d 1041; Security Union Ins. Co. v. Guthrie, Tex.Civ.App., 41 S.W. 2d 315; Security Union Ins. Co. v. Hall, Tex.Civ.App., 37 S.W.2d 811; Texas Employers' Ins. Ass'n v. Jones et al., Tex.Civ. App., 70 S.W.2d 1014.

Finding no reversible error in the record, the judgment of the trial court is affirmed.