## FEDERAL UNDERWRITERS EXCHANGE v. GREEN.

### No. 12998.

Court of Civil Appeals of Texas. Dallas.
March 1, 1941.

Rehearing Denied March 29, 1941.

Lightfoot, Robertson, Gano & Johnston, of Fort Worth, for appellant.

Raymond Wilson and Ardell M. Young, both of Fort Worth, for appellee.

YOUNG, Justice.

In a suit arising under workmen's compensation, the jury verdict established total and permanent incapacity of the employee Green, following accidental injuries, payable in a lump sum; and from judgment to that effect, appeal is taken by the insurer.

Circumstances surrounding the injuries in question were these: Mr. Green, plaintiff, had been employed by the Fort Worth Structural Steel Company at McKinney for several weeks, on a high school construction job. He was engaged in running a jack—a lifting process—at the time, under the direction of his foreman, when a wooden 2x6 beam, some 10 feet long, fell endways from the floor above, striking Green in the back. He was knocked down by the force of the timber, and received immediate hospital treatment. The blow was in the region of plaintiff's left kidney, at least two ribs being broken, with evidence of lung puncture. Pneumonia developed within several days, continuing about three weeks, and plaintiff testified to four weeks of further bed confinement at home. The accident occurred November 14, 1938, and after decision of the Industrial Accident Board, he filed suit for total and permanent incapacity, with alternative pleading of at least eighty per cent partial perma-

nent disability. Defendant denied generally and specially the existence of any valid claim; alleging payment of certain weekly sums under a mistake of fact concerning plaintiff's injuries and his wage rate; that as a consequence, it was not bound thereby.

The jury answers to various questions were, in substance, that Green had sustained accidental injuries at said time and place, while working in the course of his employment, resulting in total and permanent disability. Issue No. 8, unconditionally submitted, inquiring if partial incapacity followed as a natural result of said injuries, was answered in the negative. Subsections 1 and 2 of Art. 8309, Sec. 1, R. S., Vernon's Ann.Civ.St. art. 8309, § 1, subsecs. 1, 2, being found inapplicable, the jury determined under subsection 3 that plaintiff's average daily wage on date of injury was $10; that $30.78 was a just and fair weekly wage. Award was allowed, in lump sum, with further findings that no prior injuries of claimant had any connection with the disability in suit.

Defensive testimony presented by Federal Underwriters was solely of a medical nature; and although defendant does not admit the fact, it is clear that the accident was such as to immediately produce a period of total incapacity; the jury's function being merely to determine how long the initial disablement would continue, and its extent. The testimony on which average wages were calculated came principally from plaintiff, corroborated by his foreman, Mr. Hardy, as to actual wages paid during the period of claimant's last employment.

This record is rather free from the usual compensation trial complexities; nevertheless, defendant gleans therefrom numerous points of error, reduced, however, in the brief to nineteen several propositions. Preliminary to their discussion, it is proper to observe that the rapidly increasing volume of appellate decisions interpreting the Act (Arts. 8306–8309 Vernon's Ann.Civ.St. arts. 8306–8309) at least serves the useful purpose of precedent. Based upon almost every conceivable fact situation, standard definitions have been approved and procedural methods fixed, whereby cases arising thereunder may be considered as fairly tried. It is our conclusion, from a careful study of the instant proceedings and defendant's

briefed objections thereto, that the industrial injury sustained by plaintiff has no unusual features; that proper rules and principles have been followed and applied; and that the jury verdict, though adverse to defendant, has support in competent evidence.

In the light of settled authority, therefore, it is unnecessary to do more than discuss briefly the majority of appellant's law points.

■ Defendant first submits that the evidence is wholly insufficient to raise the issue or support the finding of total permanent disability; or, their answer to such effect, in connection with the further answer that the total disability was not temporary, is so against the weight of the testimony as to indicate prejudice or passion on part of the jury. We overrule these assignments. The evidence of Dr. Tadlock alone (plaintiff's family doctor) is sufficient to warrant the particular findings, i. e., that his injuries are permanent and wholly disable claimant from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment, and it is within the jury's province to fully credit Green's own testimony to the same effect. 45 T. J., Workmen's Compensation, Sec. 163, pp. 592, 593.

■ Complaint is also made of evidence, both from Dr. Tadlock and plaintiff, that, because of the accident, the latter would no longer be able to perform labor as a structural steel worker; arguing that such testimony, in effect, limited the test of total incapacity to work theretofore performed by him; whereas, under the law, an injured party is required to accept any employment reasonably suited to his incapacity and physical condition. If the particular evidence were all that bore on the principal issue, there would be some force to the objection; but the record discloses the statements to be only a part of plaintiff's case history concerning his physical condition before and after the accident. In this connection, evidence tending to prove inability to perform former labors was admissible. Maryland Casualty Co. v. Haley, Tex.Civ.App., 29 S.W.2d 458, writ refused.

■ We do not find the court's definitions of "total" and "partial" incapacity open to criticism leveled thereto in appellant's sixth and seventh propositions. The language thereof has long been approved as standard forms of instruction. Texas Employers' Ins. Ass'n v. Brock, Tex.Com. App., 36 S.W.2d 704; Southern Underwriters v. Stubblefield, Tex.Civ.App., 130 S. W.2d 385. Insurer made the same objection to these definitions in Federal Underwriters Exchange v. Simpson, Tex.Civ. App., 137 S.W.2d 132, which were overruled.

■ Issue 8 of the charge reads: "From a preponderance of the evidence, do you find partial incapacity of the plaintiff, R. E. Green, to be a natural result of his said injury, if any? Answer: No." Several propositions are directed by defendant to above issue and answer. First, that if there be any evidence to support a finding of permanent total incapacity, due to the injury (issue 4), the jury would have been compelled to find that partial incapacity naturally resulted therefrom; and their negative answer above indicated passion, prejudice or some other improper motive of the fact-finding body. The verdict of the jury on these issues was entirely consistent. Appellant's logic would result in an irreconcilable conflict between findings; because, it is obvious that a claimant cannot be totally disabled and partially disabled at one and the same time; Texas Employers' Ins. Ass'n v. Phelan, Tex.Civ.App., 103 S.W.2d 863; Maryland Casualty Co. v. Brown, Tex.Civ.App., 110 S.W.2d 130, reversed on other grounds by Sup.Ct., 131 Tex. 404, 115 S.W.2d 394.

■ It is next argued that issue 8, already quoted, is upon the weight of the evidence in assuming partial incapacity; also multifarious, duplicitous, and containing two questions in one. The issue, if considered as plaintiff's alternative ground of recovery and subject to the objections made, was answered in defendant's favor. No prejudice is shown in said manner of submission, being, if anything, harmless error. Gross v. Dallas Ry. & Terminal Co., Tex.Civ.App., 131 S.W.2d 113; Booth Termite & Chemical Co. v. Manuel, Tex. Civ.App., 138 S.W.2d 857; 3 T.J., Appeal and Error—Civil Cases, Sec. 888, p. 1269.

■ Appellant further objects to the conditional submission of secondary issues on partial disability following the above-mentioned issue No. 8, unconditionally submitted and answered in the negative. An

almost precise situation is reflected in Traders & General Ins. Co. v. Stakes, Tex.Civ.App., 131 S.W.2d 270, 274, writ refused, where the court held: "In the case at bar, the primary defensive issues of partial incapacity (issue 4) and temporary total incapacity (issue 6) were submitted and found against the defendant. The conditional submission of issues 8 to 12, inclusive, therefore presents no error." However, see Southern Underwriters v. Wheeler, 132 Tex. 350, 123 S.W.2d 340; and Maryland Casualty Co. v. Foote, Tex. Civ.App., 139 S.W.2d 602, writ refused, for circumstances (not present here) where conditional submission of secondary issues (which are plaintiff's and defendant's issues in one) have been held prejudicial. But even assuming that the issues on partial incapacity, following issue 8, were subject to appellant's criticism, still no harmful result followed because defendant merely objected on the ground that they did not properly present 'its defensive theory of partial incapacity. It did not prepare and request any issues to that effect; so, any objections thereto, however valid, were waived. Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183; Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683; United Employers Casualty Co. v. Knight, Tex.Civ.App., 139 S.W.2d 613.

■ When the jury first returned their verdict into court, issues 16 and 18 were that injuries suffered by plaintiff Green prior to November 14, 1938, had not, and would not in the future, contribute to his disability; whereas, issue 20 was answered, in effect, that injuries to plaintiff prior to said November, 1938, were the sole cause of his disability. The court, upon inspection of such issues, gave in writing the following instruction: "Gentlemen of the Jury: The court finds that your answers to Special Issues Nos. 16 and 18 conflict with the answer to Special Issue No. 20. Therefore you will please retire, further consider your verdict, and attempt to reconcile such conflicting answers. Tom Suggs, Judge." Defendant duly objected to said instruction, claiming that it was on the weight of the evidence, was in the nature of a general charge, and informed the jury of the effect of those answers on the judgment later to be rendered. The propositions presenting this action of the court are overruled. Judge Suggs went

no further in the additional charge than to point out the conflict and request further jury consideration, in an attempt to reconcile the particular answers. In so doing, as a careful trial judge, he was acting in accordance with the adjudicated cases. Dallas Ry. & Terminal Co. v. Starling, 130 Tex. 379, 110 S.W.2d 557; Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314, 316; Federal Underwriters Exchange v. Carroll, Tex.Civ.App., 130 S.W.2d 1101.

■ Appellant bases successive propositions on the manner of the court's general instruction on the burden of proof, arguing that the same, in connection with the wording, "Do you find from a preponderance of the evidence," found in each of plaintiff's issues, was contradictory and confusing, leading the jury to either disregard such burden or place it upon the defendant as well as upon the plaintiff. Following the answer of the Supreme Court to certified questions in Traders & General Ins. Co. v. Jenkins, 135 Tex. 232, 141 S.W.2d 312, the particular contentions are clearly without merit. See United Employers Casualty Co. v. Bezdek, Tex.Civ. App., 146 S.W.2d 473, where identical assignments were considered and overruled.

Remaining propositions urge that the two issues on daily and weekly wage are on the weight of the evidence, in that, the court therein tells the jury their answer to these questions should be based on wages earned by plaintiff on the date of his injury; whereas Subsec. 3, Sec. 1, Art. 8309, Vernon's Ann.Civ.St. Art. 8309, § 1, subsec. 3, requires the fixing of a wage rate, fair and just to both parties, in view of all the testimony relative to plaintiff's possible earning capacity. These issues read: (13-A) "From a preponderance of the evidence, what do you find plaintiff's average daily wage was, on November 14th, 1938? Answer in dollars and cents, if any. Answer: $10.00 per day." (No. 14) "From a preponderance of the evidence, what do you find to have been the average weekly wages of the plaintiff, R. E. Green, on November 14th, 1938, computed in a manner which shall seem to you just and fair to both the plaintiff and the defendant herein? Answer in dollars and cents, if any. Answer: $30.78." It is insisted by plaintiff that these propositions should be disregarded, because defendant nowise objected in the trial court to the issues as

constituting a comment on the evidence; the original objections being simply that the jury were thus limited by the court to actual wages on November 14, 1938, hence insufficient to support a judgment under either Subsec. 1 or 3. That defendant's objections distinctly pointed out the error complained of, is to be doubted. It is clear, nevertheless, that the answers were arrived at by the jury from a survey of all earnings over the year preceding, and that they were not influenced by the form of the issues to view the matter of average earnings solely as of the date of injury. Really, the evidence on which the jury were bound to determine these questions appears not disputed. The employer's foreman, Hardy, testified that claimant had been working on the McKinney job only two or three weeks prior to the accident; his wages being the regular scale of $10 per day for steel workers.

Plaintiff comfirmed this, stating further that he had worked between 150 and 160 days during the preceding year at this wage rate. Under the broad discretion accorded the jury in determining these issues, Traders & General Ins. Co. v. Bulis, 129 Tex. 362, 104 S.W.2d 488, they simply found that Green had worked 160 days in the year previous to his injuries, at $10 per day, which, divided by 52, is their answer to issue 14. The jury could hardly have found otherwise, no suspicion being cast upon the verity of plaintiff's testimony concerning his employment history. Defendant did not refute it; on the contrary, acknowledged plaintiff's average weekly wages to be at least $33.33 by voluntary payments of 60% thereof, i. e., $20 per week for 26 weeks, with no misapprehension of fact or claim of fraud. Under the particular facts of this record, error, if any, in submitting issues 13-A and 14 in above form, is also deemed harmless. Moreover, appellant's admission incident to paying appellee compensation for many weeks at $20 per week, sufficiently supports the jury verdict fixing a lesser rate; Traders & General Ins. Co. v. Harper, Tex.Civ.App., 140 S.W.2d 593, writ refused, and authorities there cited; Southern Underwriters v. Erwin, Tex.Civ. App., 134 S.W.2d 720, writ granted on other grounds; Industrial Indemnity Exchange v. Ratcliff, Tex.Civ.App., 138 S.W. 2d 613; Texas Employers Ins. Ass'n v. McNorton, Tex.Civ.App., 92 S.W.2d 562.

All assignments and propositions of appellant, after consideration, must be overruled and the judgment of the trial court affirmed.

Affirmed.