**NORTHERN TEXAS TRACTION CO. v. CITY OF POLYTECHNIC et al.**
(No. 254–3460.)

(Commission of Appeals of Texas, Section A. Jan. 4, 1922.)

1. **Judgment ⟨⟩18(2)—Plea, asking affirmative relief on sufficient facts stated, will support judgment for such relief.**

If the facts stated in a defensive plea show no more than that the plaintiff be not entitled to recover, the plea will not support a judgment for affirmative relief, but when the facts stated are sufficient to entitle the party to maintain an action thereon, and appropriate relief is prayed for, the plea will support a judgment for such relief, though it may also tend to show a good defense to plaintiff's cause of action.

2. **Judgment ⟨⟩18(2)—Allegations in plea for affirmative relief considered in connection with allegations in petition.**

In testing the sufficiency of the averments in a plea against a codefendant for affirmative relief, they should be considered in connection with the allegations made in the plaintiff's petition.

3. **Pleading ⟨⟩433(4)—Plea of city against codefendant in personal injury case held to support judgment for affirmative relief, where no exceptions were filed.**

In an action against a city and a street railway company for personal injuries, a plea by the city, asking judgment over against the traction company, in that traction company had agreed to hold it harmless from injuries to persons arising by reason of construction and operation of railway, *held* sufficient to

support a judgment in the city's favor against the traction company, though the paragraphs constituting the plea were not called a cross-action, and did not formally "complain" of the traction company, nor repeat the allegations of corporate character, residence, etc., made by the plaintiff; such being only matters of form, and no special exception being filed thereto.

**4. Appeal and error ⊚⟶1175(5)—Court of Civil Appeals cannot render judgment on reversal, where finding of fact is necessary.**

The Court of Civil Appeals cannot render a judgment on reversal, where to do so requires the finding of a fact as to which the evidence is conflicting, or where the evidence is undisputed, but reasonable minds might differ as to the conclusion to be drawn.

**5. Appeal and error ⊚⟶1175(5)—Evidence held not such as to warrant appellate court in rendering judgment on reversal.**

In a personal injury action against city and traction company, where city asked for judgment over against the traction company, and where judgment was against the city, but in favor of the traction company, *held* that the evidence as to the fault of the traction company was not such as to warrant the Court of Civil Appeals in rendering a judgment against it in favor of the city on reversal of the judgment below.

**6. Municipal corporations ⊚⟶682(4)—City may require indemnity.**

A municipal corporation has power to control the use of its streets, and, as it may become liable to the public for any improper condition of streets caused by a street railway's occupying and using them for lawful but unusual purposes, may require indemnity from a street railway on which to rely in case a cause of action results against it from such use and occupancy.

**7. Indemnity ⊚⟶9(1)—Indemnity provided for in franchise held to cover injuries by acts of independent contractor.**

A street railway franchise ordinance, providing that space between rails be kept in same condition as remaining portion of street, and that street railway hold the city harmless from any damage to property or injuries to persons which might arise by reason of construction, maintenance, and operation of the railway, *held* to cover injuries received by a member of the public as the result of the acts or negligence of an independent contractor, hauling gravel for the street railway, when it was raising its tracks to make them conform to a change in grade made by the city.

**8. Indemnity ⊚⟶3—Contract by street railway to indemnify city held not against public policy.**

An agreement of a street railway to indemnify city in case of judgments against it for personal injuries resulting from the street railway's occupancy of the street is not void as against public policy, in that liability of the city may be predicated on its negligence in failing to discover or remedy dangerous conditions in the street.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by K. C. Redmon against the City of Polytechnic and the Northern Texas Traction Company and another for personal injuries. From a judgment of the Court of Civil Appeals (217 S. W. 730), reversing a judgment in its favor, the traction company brings error. Reversed and remanded in part and affirmed in part.

Capps, Cantey, Hanger & Short and Phillips & Trammell, all of Fort Worth, for plaintiff in error.

T. R. James, City Atty., and Samuels & Brown, all of Fort Worth, for defendants in error.

GALLAGHER, J. K. C. Redmon, one of the defendants in error, brought suit in the district court of Tarrant county against the Northern Texas Traction Company, plaintiff in error, and the Stone & Webster Engineering Company and the city of Polytechnic, the other defendants in error herein, for damages for personal injuries alleged to have been suffered by his wife, Mrs. Redmon. He alleged that the city of Polytechnic was a municipal corporation, that the Northern Traction Company operated a line of street railway along Bishop street in said city, and that said traction company and Stone and Webster Engineering Company were repairing the tract of said street railway, and in doing so were hauling material for such repairs in heavily loaded weapons. He further alleged that the drivers of such wagons negligently drove one or more of them over a certain culvert between the sidewalk and street at the intersection of said Bishop street and Avenue G in said city, and thereby destroyed said culvert, and left the ditch covered by the same open, and that said traction company and said engineering company negligently permitted the ditch to remain in that condition. He further alleged that the city of Polytechnic negligently permitted the ditch to remain open after its officers and agents knew, or ought to have known, its condition, and that thereafter his said wife, notwithstanding the exercise of due care for her own safety, stepped into said ditch, and was thereby caused to fall, and that as a result of such fall she sustained painful and serious injuries.

The city of Polytechnic answered by general demurrer, general denial, and plea of contributory negligence. It also pleaded that its said codefendants were doing certain work on said street railway track, and that in the course of said work they caused certain material to be hauled to said track in wagons, and that the drivers of said wagons were employees of said codefendants, and that such drivers in the prosecution of the work

---

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of their employment negligently drove said wagons over the culvert in question, thereby breaking and destroying the same; that if it was negligent with respect to the condition of such culvert, such negligence consisted merely in its failure to discover and remedy the condition caused by the destruction of said culvert. It further pleaded that said traction company had been by an ordinance of said city granted a franchise for the construction and operation of said line of street railway on said Bishop street, and that it was provided in said ordinance that the said traction company should hold it harmless from any damages to property and injuries to persons which might arise by reason of the construction, maintenance, and operation of said line of railway, and the said traction company accepted such franchise, and constructed said line of railway, and that said culvert was destroyed and said ditch exposed in the construction, maintenance, and operation of said line of railway, and that the injuries suffered by Mrs. Redmon arose out of the construction, maintenance, and operation thereof. It prayed in the alternative, in the event of recovery against it in any sum, that it have judgment in like sum over against its said codefendants. The ordinance was set out in full as an exhibit to said answer.

The traction company and the engineering company filed separate answers to plaintiff's petition, and also filed separate answers to the allegations contained in the answer of the city. The said answers to the allegations made by the city consisted of a general demurrer, general denial, and a plea that the wagon or wagons which destroyed the culvert in question belonged to and were being operated by one Allen, an independent contractor, over whom neither of said defendants had any control.

The case was tried before a jury. Evidence was introduced by the several parties. The court submitted the case upon a general charge, which instructed the jury, in substance, that if they found that the culvert in question had been removed, leaving a ditch in the usual path of pedestrians, and that the same remained open and exposed for a sufficient length of time for the city to have discovered and remedied the same, that the failure of the city to discover and remedy said condition was negligence, and that such negligence was the proximate cause of Mrs. Redmon's fall and of the injuries resulting therefrom, to find a verdict for plaintiff, unless they found for defendant upon the issue of contributory negligence, which issue was submitted in a separate paragraph of the charge. The court gave a separate peremptory instruction to find for the traction company and the engineering company. The jury returned a verdict in favor of plaintiff against the city for $20,000 damages, and in favor of the traction company and the engineering company. The trial court required plaintiff to remit $10,000 of the sum found in his favor by the jury, and rendered judgment for $10,000 in his favor against the city, and also rendered judgment in favor of the traction company and engineering company against both plaintiff and said city.

There is no complaint of the judgment in favor of the engineering company. The city appealed from the judgment, assigning as error the action of the court in giving a peremptory charge in favor of the traction company, and also attacking the judgment for $10,000, so rendered against it, on the ground that it was excessive in amount. The Court of Civil Appeals held the judgment excessive, and required $2,500 thereof to be remitted, and affirmed such judgment at the sum of $7,500. That court also reversed the judgment of the trial court in favor of the traction company, and rendered judgment against it in favor of the city for $7,500, the amount of the judgment against the city so affirmed by said court. 217 S. W. 730.

The case is before us upon writ of error granted by the Supreme Court upon application of the traction company.

[1-3] The first specification of error submitted is that the Court of Civil Appeals erred in reversing the judgment of the trial court and rendering judgment in favor of the city against plaintiff in error, because the city's pleadings are insufficient to entitle it to such relief. If the facts stated in a defensive plea show no more than that the plaintiff be not entitled to recover, the plea will not support a judgment for affirmative relief but when the facts stated in a defensive pleading are sufficient to entitle the party pleading the same to maintain an action thereon, and appropriate affirmative relief is prayed for, such pleading will support a judgment for such relief, though it may also tend to show a good defense to plaintiff's cause of action. Short v. Hepburn, 89 Tex. 622, 624, 625, 35 S. W. 1056. In testing the sufficiency of the averments in the city's pleading on this point, they should be considered in connection with the allegations made in the plaintiff's petition. Jones v. Wagner, 141 S. W. 280 (writ refused). Measured by these standards, the city's pleadings are sufficient to support a judgment in its favor against the traction company. It is true the city did not call these paragraphs of its answer a cross-action, nor did it formally "complain" of the traction company, nor repeat the allegations of corporate character, residence, etc., made by the plaintiff, but these were all matters of form. No special exception thereto was filed by the traction company, and even its general demurrer is not shown to have been presented to the court. The specification of error here considered is without merit.

[4, 5] The next specification of error submitted is that the Court of Civil Appeals, having reversed the judgment of the trial court in favor of plaintiff in error, erred in rendering judgment against it for $7,500, the amount of the judgment affirmed against the city, because the evidence was insufficient to justify such action. The city of Polytechnic decided to grade and gravel Bishop street. It required the traction company to raise its track and gravel the street between its rails and 18 inches on each side thereof. In raising the track, it became necessary to dig out the dirt between the cross-ties and rails and haul it away. The traction company had this dirt loaded and hauled away at a stipulated price per load, but the evidence leaves it uncertain whether the wagons that hauled the dirt away were the same wagons that hauled the gravel used by the traction company in graveling that part of the street occupied by its track. The gravel so used by the traction company was furnished by one Allen, whose contract required him to deliver the gravel by dumping it on the track. He was paid by the load, and the traction company had no control or management of the wagons and teams so used, or the drivers of the same.

The city furnished the gravel for the remainder of the street, and it was hauled and spread by a contractor. There was testimony that all of this work was going at the same time, but that the city's contractor worked a short distance behind the work of the traction company. There was also testimony tending to show that the city did not begin graveling this street until after Mrs. Redmon suffered the injuries complained of. There was evidence that the wagons hauling gravel used by the traction company usually came into Bishop street from the east, and that the wagons hauling gravel for the city usually came into the street from the west, but there was no evidence that they always did so. The wagons that delivered gravel for the city were ordinary wagons, that dumped by lifting the boards, but the wagons that delivered gravel to the traction company were dumped by a chain on the bed, and were called by the witness "dump wagons."

The evidence shows that the culvert in question was over the gutter or ditch on the east side of Bishop street, just north of Avenue G, and that it was used to enable one to pass from the sidewalk to the street without stepping into such gutter or ditch. The evidence is undisputed that this culvert was crushed and destroyed. One witness saw the wagon that crushed the culvert. It came from the east or southeast, and tried to turn and cross the culvert and broke it, but this witness neither identified nor described the wagon. Another witness saw several "dump wagons" run over the culvert, but did not see the wagon that broke it in. Most of the wagons seen by this witness came down Bishop street from the north and turned east on Avenue G, but a few of them came from the west. There was no issue submitted to the jury which involved, either directly or indirectly, the question or responsibility for the destruction of the culvert.

Before a judgment could be properly rendered against plaintiff in error in this case, it was necessary to have a finding of fact that the destruction of said culvert, from which the injuries sustained by Mrs. Redmon resulted, occurred by reason of the construction or maintenance of said line of railway. Could the Court of Civil Appeals, in the absence of such a finding by the jury, make such finding of fact itself, and render judgment thereon against plaintiff in error?

The authority of the Court of Civil Appeals in such cases has been declared and the statute conferring the same construed and explained in H. & T. C. Railway Co. v. Strycharski, 92 Tex. pp. 1, 8, 9, 37 S. W. 415, 416 from which we quote as follows:

"The authority of the Courts of Civil Appeals to render final judgments in causes wherein they have reversed the judgments of the trial courts is found in the following article of the Revised Statutes:

"'Article 1027. When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained, or the damage to be assessed or the matter to be decreed is uncertain. In either of which cases the cause shall be remanded for a new trial in the court below.'

"Whenever there is any material fact necessary to support the case of the party in whose favor the court proposes to render judgment which is disputed in the evidence or which is not established by agreement or by undisputed evidence conclusive in its nature, then, within the meaning of the law, it is necessary that a matter of fact shall be ascertained, and the case belongs to the class which the statute commands the court to remand upon reversal of the judgment of the lower court. The Courts of Civil Appeals, upon reversing judgments of the trial courts, cannot enter final judgments unless upon the evidence as it appears in the record one party as a matter of law is entitled to judgment; the evidence must be of that conclusive nature that the trial court should have directed a verdict in favor of that party. The exercise of such authority in cases resting upon facts which are controverted and about which the evidence is conflicting or uncertain would be to usurp the powers conferred upon a jury in the trial of such causes and to deny litigants the constitutional right of trial before a jury. Elliott, App. Proc. §§ 565, 566; Wise v. Williams, 88 Cal. 30; Gay v. Davey, 47 Ohio St. 396; Jones v. Fortune, 128 Ill. 518; Claiborne v. Tanner, 18 Tex. 68.

"In the exercise of its appellate jurisdiction, a Court of Civil Appeals may draw from the evidence conclusions of fact different from those arrived at by the jury or judge, and it may reverse the judgment of the lower court and re-

mand the cause for the reason that the verdict and judgment are against the weight of the evidence. But the determination of questions of fact as the basis of a final judgment involves the exercise of original jurisdiction, which has not been conferred upon the Courts of Civil Appeals."

There was some conflict in the evidence in this case; but, even if the evidence were undisputed, it does not show that the wagon which first ran over and crushed and destroyed the culvert was being used at the time in the construction, maintenance, or repair of said line of street railway, with that degree of certainty that reasonable minds, seeking to arrive at a proper conclusion, could not differ as to the effect thereof.

The Court of Civil Appeals erred in rendering judgment against plaintiff in error instead of remanding the case, and this specification of error should be sustained. Railway v. Strycharski, supra; Underwood v. Jones, 95 Tex. 121, 124, 125, 65 S. W. 480; T. & P. Ry. Co. v. Taylor, 103 Tex. 367, 370, 126 S. W. 1117, 1200.

Plaintiff in error, by appropriate specification, contends that the indemnity agreement contained in the franchise ordinance upon which the city's prayer for judgment over against it is founded is not broad enough to cover injuries received by Mrs. Redmon, as a result of the acts or negligence of an independent contractor. The franchise ordinance specifically provided that the railway track to be constructed should conform to the grade of the street; that the work of constructing such track should be done with as little inconvenience to the public as possible; and that the street should then be restored to its original condition, and the space between the rails kept in the same condition as the remaining portion of the street; that when any part of the street should be paved by the city the traction company should, in like manner, with like material, pave between the rails of its track and 18 inches on the outside thereof at its own expense; that the traction company should hold the city harmless from any damage to property or injuries to persons which might arise by reason of the construction, maintenance, and operation of said railway. The traction company expressly accepted the franchise so granted, as set out in said ordinance, and agreed that it would be bound. by and observe and carry out the terms and conditions thereof.

[6] A municipal corporation has power to control the use of its streets, and, as it may become liable to members of the public for any improper condition of such streets caused by persons occupying and using them for lawful but unusual purposes, it may require indemnity from such persons on which to rely in case a cause of action results against it

from such use and occupancy. Taylor v. Dunn, 80 Tex. 652, 667, 668, 16 S. W. 732.

[7] The city, in granting the franchise and imposing the conditions contained in the ordinance granting the same, evidently contemplated that in the construction of said line of railway and in its maintenance by improvements or repairs, it would be necessary, from time to time, to enter upon said street and use and occupy it with men, teams, wagons, tools, and material, and that in the course of such use and occupancy something might be done or omitted that would give rise to a cause of action against it in favor of some member of the public. From such liability as might arise, it was its purpose by the stipulations contained in said ordinance to secure indemnity. The traction company agreed to all the terms, conditions, and provisions of such ordinance, and promised to observe and comply with the same. There is nothing in the ordinance suggesting that the city should have recourse against the traction company for such liability only as might arise out of said company's own acts or the acts of its servants and employees. It would have had such recourse without any contract of indemnity. City of San Antonio v. Talerico, 98 Tex. 151, 155, 81 S. W. 518. Clearly, the purpose of the stipulations contained in the ordinance and agreed to by the traction company was to afford the city recourse against the traction company for *all* liability arising out of the construction and maintenance of said track in said street, regardless of whether such liability arose by reason of the acts or omissions of the traction company, its agents, servants, or employees, or of its independent contractors. This is the plain import of the ordinance accepted and agreed to by the traction company. It should be so construed. This specification is without merit.

[8] Plaintiff in error contends that, inasmuch as the liability of the city in this case is predicated on its negligence in failing to discover or remedy the dangerous condition of the street arising out of the destruction of the culvert in question, the contract of the traction company to indemnify it against such liability is void as against public policy. Our courts in cases involving the application of the principle of law so invoked have held to the contrary. City of San Antonio v. Talerico, supra; M., K. & T. Ry. Co. v. Carter, 95 Tex. 461, 476–478, 68 S. W. 159; H. & T. C. Ry. Co. v. Diamond Press Brick Co. (Com. App.) 222 S. W. 204, 206.

We recommend that the judgment rendered by the Court of Civil Appeals in favor of defendant in error, city of Polytechnic, against plaintiff in error, Northern Texas Traction Company, be reversed, and the cause of action, as between said parties, be remanded to the district court, and that in all

other respects the judgment of the Court of Civil Appeals in this case be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied March 1, 1922.