JAMES STEWART & CO., Inc., Appellant,

v.

H. B. MOBLEY, Appellee.

No. 14993.

Court of Civil Appeals of Texas.

Dallas.

July 8, 1955.

Rehearing Denied Sept. 23, 1955.

Leachman, Gardere, Akin & Porter, Henry D. Akin, Dallas, for appellant.

R. T. Bailey and William L. Richards, Dallas, for appellee.

CRAMER, Justice.

This suit is upon a written indemnity agreement contained in a subcontract between appellant as contractor and appellee as subcontractor. This phase of the case was severed and submitted to the trial court upon an agreed statement of facts, as follows:

"On the 27th day of July, 1948 this defendant as contractor, and third party defendant as subcontractor, agreed to provide all labor and material and to complete the erection of all the light weight fill and cement work required for the project of erecting an office building for Texas Employers Insurance Association and Employers Casualty Company at Young and Akard Streets in the City of Dallas, Texas, for which contractor agreed to pay subcontractor $59,000, which said contract specifically provided among other things:

"V. Subcontractor shall be responsible for injuries to or death of all persons whether employed by subcontractor or otherwise, and for damage to any property whether belonging to subcontractor or to others, arising from acts of the subcontractor or its employees during the progress of the work, against all which injuries and damages to persons and property the subcontractor must guard and make good all such damage from whatever cause.

"In addition to the liability of the sub-contractor for personal injuries or death, as hereinbefore set forth, and in the nature of collateral protection to contractor, the subcontractor shall take out, maintain and pay for public liability insurance in $ See Art. XXII limits and employers' liability or workmen's compensation insurance through agents and in companies to be designated by the contractor, covering the public and all workmen engaged upon its work, such policies being in favor of the subcontractor to protect it against loss arising from injuries or death to persons, and this shall apply to any and all subcontractors of the subcontractor, and the subcontractor shall furnish to the contractor certificates of such insurance before the work is started. It is expressly understood and agreed that the contractor's designation of the insurance company and the limits of public liability insurance above mentioned, shall not release the subcontractor from its obligation to indemnify and save the contractor harmless from all expense in connection with any and all claims that may arise as a result of its employment on this work. In the event of suit being brought against the contractor or owner for any claim growing out of the above causes, the subcontractor shall pay all expenses of such litigation as soon and as often as incurred, and in the event of judgment being entered against the defendant in any such action, the subcontractor shall immediately after the entry thereof pay to the defendant the amount of such judgment. * * *

"XVI. The subcontractor understands that the hoists installed for the structure are for materials only, and subcontractor shall not permit or allow its employees to ride on any of the said hoists, and shall require its employees to comply with all safety requirements of the State and City codes, or posted by the contractor relating to the use of scaffolds, hoists, elevators and other appliances.

"Whenever the subcontractor shall use any scaffold, derrick, hoist, or equipment of any other kind belonging to the contractor, the subcontractor shall satisfy itself as to the safety of such facilities and hereby agrees to and shall relieve and hold the contractor harmless from any and all suits and actions that may be brought against the contractor for any injury or death to any person or persons or damage to property that may result from the use of said scaffolds, derricks, equipment or hoists, by the subcontractor or its employees.

"No one in the contractor's employ has any right to grant the subcontractor or his employees permission to ride on said hoists except executive officers of the contractor, and then only in writing.

"III. It is agreed that the subcontractor shall have the free use of the hoisting facilities and lights in place furnished by the general contractor, as required by the progress of the work and in cooperation with the other trades.

"II. Prior to June 7, 1949, contractor had installed a hoist, or elevator, on the side of the building for the use of its employees, the employees of subcontractors, and all others engaged on said construction job in transporting employees, materials and equipment used in connection with said construction job, which hoist, or elevator, belonged to contractor and was operated by an employee of contractor, C. O. Taylor, and, with the knowledge and consent of contractor, was used by said subcontractor's employees to raise and lower his employees, materials and equipment. On the 7th day of June, 1949, Arthur Watkins, while engaged in the course of his employment with subcontractor in performing part of the work which subcontractor agreed to perform, under said contract, pushed a two wheel cart known as a "Georgia buggy," loaded with concrete, onto said hoist or elevator for the purpose of having same transported to a higher level where the cement was to be poured by said subcontractor's employees, and when the said Arthur Watkins stepped onto the floor of said hoist or elevator, it fell into the basement carrying plaintiff and said Georgia buggy with it a distance of fifteen or twenty feet, inflicting personal injuries upon plaintiff; that the claims of the said Arthur Watkins are set out and shown in his first amended original petition on file herein, and it is made a part

hereof for all purposes as if fully set out herein.

"Zurich General Accident & Liability Insurance Company, Ltd., hereinafter called intervenor, had in force at said time a policy of workmen's compensation insurance issued by it to said subcontractor and paid to and for the use of Arthur Watkins benefits under the provisions of said policy under the Workmen's Compensation Act of Texas [Vernon's Ann.Civ.St. art. 8306 et seq.] in the total sum of $4,422.90 on account of said accidental injuries so sustained by the said Arthur Watkins in the course of his employment by said subcontractor.

"After settlement of said workmen's compensation claim, Arthur Watkins, as plaintiff, filed this suit against contractor and C. O. Taylor, contractor's employee, who was operating said hoist or elevator in the course of his employment at the time it fell with Arthur Watkins, to recover damages for his personal injuries over and above the compensation benefits received by him, alleging that the fall of the hoist and resulting injuries were due to the negligence of the said C. O. Taylor which was imputable to his employer, the contractor, and did not allege that such fall and injuries were the result of any defective equipment, as is more fully shown by plaintiff's first amended original petition on file herein, reference to which is here made and which is a part hereof for all purposes as if fully set out herein. Said intervenor filed a plea of intervention herein to recoup the workmen's compensation benefits paid out by it, as is more fully shown by said plea of intervention on file herein, reference to which is here made and which is made a part hereof for all purposes as if fully set out herein.

"C. O. Taylor filed his original answer herein, wherein he pleaded a general denial, unavoidable accident and contributory negligence, and contractor filed its first amended original answer herein wherein, in addition to the defenses alleged by C. O. Taylor, it impleaded and filed a third party complaint against third party defendant, subcontractor, leave of the court having been first had to file such third party complaint, seeking to recover any judgment that might be rendered against it from said third party defendant, or subcontractor, under the indemnity provision of said contract entered into between defendant as contractor and third party defendant as subcontractor.

"VI. On the 2nd day of March 1951, a compromise settlement agreement was entered into between the parties to this suit, wherein the parties agreed to compromise all claims, rights and causes of action asserted by Arthur Watkins and intervenor against defendant James Stewart & Co., Inc., and its employees by payment by said defendant of $3,500 to plaintiff, Arthur Watkins, and $4,422.90 to intervenor, for which amounts it was agreed that judgment should be entered against contractor and C. O. Taylor, defendants, with the further agreement that the judgment should order a separate trial as to the third party complaint filed by defendant against said third party defendant, and it was further agreed that the making of such compromise settlement and entering of a judgment should not prejudice the rights of either party to said third party complaint in any way, and it was and is now agreed that said compromise settlement was reasonable, based solely upon the fall of the elevator and resulting injuries being due to the negligence of contractor and C. O. Taylor and not the result of defective equipment, a copy of which compromise settlement is hereto attached marked 'Exhibit B', reference to which is here made and which is made a part hereof for all purposes as if fully set out herein.

"VII. On the 9th of March, 1951 judgment was entered in this suit consummating such compromise settlement agreement, showing contractor paid simultaneously with the entry of said judgment $3,500 to Arthur Watkins and $4,422.90 to intervenor, and defendant paid court costs in this suit amounting to $25, and the third party complaint was severed from the remainder of this cause and a separate trial thereof was ordered, a copy of which judgment is hereto attached marked 'Exhibit C,' reference to which is here made and which is made a part hereof for all purposes as if fully set out herein.

"VIII. The sole question remaining for determination by the court in this suit in connection with said third party complaint is whether the provisions of said contract obligate the subcontractor, H. B. Mobley, to indemnify said contractor, James Stewart & Co., Inc., for the agreed amounts of damages and costs paid by James Stewart & Co., Inc., for the injuries to said subcontractor's employee, Arthur Watkins, resulting from the fall on June 7, 1949 as described in his first amended original petition referred to in paragraph II hereof, and such third-party complaint remaining in this case may be determined by the court upon this agreed statement of facts, including the Exhibits referred to and attached hereto."

The trial court, after hearing and argument, rendered judgment upon such agreed facts in favor of appellee and that appellant take nothing; and from that judgment appellant has duly perfected this appeal, briefing but one point, in substance that the trial court erred in holding that the indemnity agreement did not obligate the subcontractor to hold the contractor harmless from the suit brought against such contractor by one of the subcontractor's employees who was injured while using the contractor's hoist. This point is countered by appellee that the trial court correctly held that appellant could not recover from appellee because the indemnity provision of the subcontract did not contain an express clause covering claims based upon the negligence of appellant general contractor and that a contract cannot be construed to cover claims due to the negligence of such general contractor.

The record shows that the contract, if it provides for indemnity by Mobley to the Stewart Company for the amounts paid by Stewart Company to Watkins, that such reimbursement must be based upon the legal theory that Mobley is liable under the express terms of the indemnity contract to reimburse Stewart Company for moneys paid for damages caused by Stewart Company's own affirmative negligence, since the affirmative negligence of Stewart Company's employee Taylor caused the injury suffered by Watkins; in other words, the only question of law for our consideration (see par. 8, agreed statement of facts) is whether or not the indemnity agreement required the subcontractor to indemnify the contractor for the contractor's own employee's affirmative negligence.

■■ ▪ While there is a majority and a minority rule on such question, our Texas courts have committed this State to an affirmative answer to such general question and such an agreement is not against the public policy of this State. As stated in 23 Tex.Jur. 525, Indemnity, sec. 5: "A contract of indemnity may be made to afford protection from loss because of possible or prospective tort liability. Such a contractual obligation may be enforced in accordance with its terms, irrespective of the fact that the liability protected against arose through the combined negligence of the parties to the contract or through the sole negligence of the party indemnified. Nor does the fact that a contract undertakes to save one harmless from loss resulting through his own negligence, in itself, render the agreement contrary to public policy." Citing, material here, Gulf, C. & S. F. R. Co. v. Scripture, Tex.Civ.App., 210 S.W. 269, reversed on other points, Pullman Co. v. Gulf, C. & S. F. R. Co., Tex.Com. App., 231 S.W. 741; Houston & T. C. R. Co. v. Diamond Press Brick Co., Tex.Com. App., 111 Tex. 18, 222 S.W. 204, modified 111 Tex. 18, 226 S.W. 140.

While there is a conflict in authorities on the general subject of indemnity against indemnitee's own negligence, we are of the opinion that in the majority of such cases, under the particular facts here, liability exists under an indemnity agreement for such indemnitee's own negligence. In 143 A.L.R. at p. 314, the question here is commented upon as follows: "However, in all cases coming within the scope of this annotation in which the validity of a subcontractor's agreement to indemnify the contractor against the latter's own negligence was in issue, such an agreement was held valid."

Although indemnity contracts must be strictly construed and liability thereunder cannot be increased beyond that within its express terms, the contract here, in the second paragraph of section XVI, provides indemnity from all suits—that may be brought against a contractor for any injury or death to any person or persons, or damage to property that may result from the *use* of said equipment or hoist by the subcontractor or its employees.

"*Use*" is to employ for accomplishment of a purpose; to apply to one's service; to avail oneself of. See 43 Words and Phrases, p. 478, "Use," Subdivision, Employ. And Southwestern Telegraph & Telephone Co. v. City of Dallas, Tex.Civ.App., 174 S.W. 636, writ ref.

The injury here having resulted from the subcontractor's employee's *use* of the hoist, such injury was clearly within the terms of the indemnity agreement.

For the reasons stated, point 1 is sustained, counter-point 1 is overruled, and the judgment below is reversed and here rendered for the amounts due under the indemnity agreement.

Reversed and rendered.