The OHIO OIL COMPANY, Petitioner,

v.

Darrell SMITH, Respondent.

No. A–9066.

Supreme Court of Texas.

March 6, 1963.

Graves, Dougherty, Gee & Hearon, Wm. L. Garwood, Austin, Stubbeman, McRae, Sealy & Laughlin, F. H. Pannill, Midland, J. O. Terrell Couch, Houston, for petitioner.

Warren D. Barton, Garland Casebier, Midland, for respondent.

SMITH, Justice.

This is an indemnity contract case wherein the indemnitee, Ohio Oil Company, was awarded a summary judgment in the District Court of Midland County, Texas, for recovery under the indemnity provisions of a work-over contract. The Court of Civil Appeals reversed and rendered judgment in favor of the indemnitor, Smith. 356 S.W. 2d 443. The Ohio Oil Company is Petitioner here. The parties will hereinafter be referred to as Ohio and Smith; emphasis will be ours unless otherwise indicated.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

On March 31, 1953, Ohio and Smith entered into a written contract in which Smith agreed to perform work-over operations on one of Ohio's wells in Lea County, New Mexico. The parties agreed that Ohio would furnish certain labor, material and services in addition to those furnished by Smith. Among other things, Ohio agreed to furnish water, fuel, special fluids (drilling muds and emulsions), mud-testing equipment, tubing, packers, casing-heads, "Christmas trees", etc.

In April of 1953, one Alva Hunt, who was Smith's employee, was injured in the performance of the work-over service. Hunt's injuries were sustained when he fell from a test tank owned by Ohio. In the opinion of the Court of Civil Appeals the test tank was not one of the items required to be furnished by either party under the terms of the contract. However, the evidence is conclusive that the tank in question was furnished pursuant to the terms of the contract, and for the purpose of the work-over operations. In response to questions by counsel, Smith stated in his deposition:

Q: "* * * Mr. Smith, at the conclusion or *during the course of this work, was it necessary from time to time to make tests* to see what you had accomplished or what had been done, what needed to be done?

A: "Yes, sir.

Q: *"Would those tests include opening the well and flowing into tanks,* or whether it would flow, what it would flow, or how much, was that part of the work?

A: "Yes, sir.

Q: "Would that flowing—it would be flowed into tanks, is that not right, rather than into pits?

A: "Not necessarily, it might be pits or it might be tanks.

\* \* \* \* \* \*

Q: "Did you in your work move tanks onto a location or did you use tanks that were already there, or how would that take place?

A: "I didn't have any tanks of my own, *the tanks or pits were always furnished by the company."*

As to the tank in question, Smith stated:

A: " \* \* \* the tank was more or less a standard tank used on leases and in this type of work, *set there for us to test the well into."*

Hunt brought a negligence action against Ohio, alleging that Ohio had failed to provide him a safe place to work, and claiming $250,000 in damages for the loss of a leg. Smith did not take part in such action, but had been notified by Ohio of Hunt's claim. Ohio subsequently entered into an agreed judgment awarding Hunt $15,000 after Smith refused Ohio's demand that he defend.

In April of 1957 Ohio filed this suit against Smith alleging its contractual right to indemnity from Smith for settlement costs and expenses, and subsequently moved for summary judgment on the basis of the pleadings, affidavits, Smith's deposition and the contract. The District Court granted Ohio's motion for summary judgment and rendered judgment against Smith for the amount of the agreed judgment ($15,000), and other expenses and attorney's fees ($4,706) incurred by Ohio in defense of Hunt's claim. There is no question as to the reasonableness of the agreed judgment or the expenses.

The Court of Civil Appeals in reversing the District Court has held that the "express negligence" and "strict construction" doctrines preclude the application of the indemnity provisions of the work-over contract since it was the indemnitee's not the indemnitor's negligence that was the cause of Hunt's injuries. The Court of Civil Appeals rendered judgment for Smith even though he had not moved for summary judgment in the trial court. In the trial court Smith filed only exceptions in opposition to Ohio's motion for summary judgment coupled with a motion to dismiss.

The main controversy centers around Sections 15 and 17 of the work-over contract which provide:

"15. OHIO INDEMNIFIED:

"Ohio shall not be liable or responsible for and Contractor shall save and hold harmless Ohio from and against *any and all claims and damages of every kind, for injury to or death of any person* or persons and for damage to or loss of property, *arising out of or attributed, directly or indirectly, to the operations of Contractor hereunder.* Contractor shall likewise indemnify Ohio for any or all injury or damage to property belonging to Ohio, arising out of or in connection with or resulting from any and all acts or omissions of Contractor hereunder. (emphasis added)

"17. STATUTES TO BE COMPLIED WITH:

"(a) Contractor agrees to comply with the Workmen's Compensation Act of the State of New Mexico and to pay or cause to be paid all compensation, medical or hospital bills which may become due or payable thereunder, and *to protect and indemnify Ohio from and against any and all liability by reason of injury of employees of Contractor.* Contractor shall furnish Ohio with a certificate from the State Agency charged with the administration of the Workmen's Compensation Act evidencing Contractor's compliance therewith." (Emphasis added.)

The principal issue presented here is whether under the provisions of this contract the indemnitor (Smith) is liable to the owner-indemnitee (Ohio) for damages and expenses incurred and arising out of the sole negligence of the indemnitee. Though the issue is simply stated, it is not so simply answered, for again we are faced with the argument that for the sake of certainty this Court should depart from the established jurisprudence of this state and adopt the "express negligence" doctrine. The resolving of the issue is further complicated by the assertion that the general rule in this state has been limited in its application by Mitchell's v. Friedman, infra, to those instances wherein the parties have contracted as to some specific operation or instrumentality.

### The "Express Negligence" Doctrine

■ Stated generally, the "express negligence" doctrine provides that contracts will not be construed so as to indemnify a person against his own negligence unless such intention is expressed in specific terms. It is Ohio's contention that this doctrine has been rejected by the courts of this state. The Court of Civil Appeals drew a distinction between cases involving the rental or lease of real or personal property wherein the "express negligence" doctrine has been rejected in Texas, and cases involving agreements between owners and contractors. Ohio takes the position that this distinction is untenable, but if the doctrine does apply in owner-contractor situations, then it nonetheless does not apply in instances where only the passive negligence of the owner is involved. Smith contends that the Court of Civil Appeals properly applied the doctrine in this case.

The text authorities are almost unanimous in agreeing that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not established in express terms. See generally: 27 Am.Jur., Indemnity, § 15; Anno. 175 A.L.R. 1, §§ 17 and

18. One authority states that "[t]here are literally hundreds of cases supporting this proposition." 175 A.L.R. 1, § 17, n. 11. Indeed, it has been stated that the majority of the states hold agreements to indemnify against the negligence of the indemnitee to be void. See: 27 Am.Jur., Indemnity § 9. This has never been the rule in Texas.

■■ In this state, contracts written or construed so as to allow indemnity for liability arising out of the indemnitee's own negligence have long been held not to be violative of the public policy. Northern Texas Traction Co. v. City of Polytechnic, Tex.Com.App. (1922), 236 S.W. 73; James Stewart & Co. v. Mobley, Tex.Civ.App. (1955), 282 S.W.2d 290, wr. ref. While there is a majority and a minority rule on the subject, the jurisprudence of this state commits us to the proposition that while the intent to indemnify against the results of the indemnitee's negligence must be clear, it need not be expressed. Houston & T. C. R. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204, 226 S.W. 140; Northern Texas Traction Co. v. City of Polytechnic, supra; James Stewart & Co. v. Mobley, supra; Mitchell's v. Friedman, 157 Tex. 424, 303 S.W.2d 775.

In the Friedman case, supra, this court stated:

"It is not necessary, therefore, for the parties to say in so many words that they intend to protect the indemnitee against liability for negligence. An obligation to hold harmless from claims, liability or damage resulting from a *specified operation or instrumentality* will be enforced in accordance with its terms even though the indemnitee may thereby be relieved of the consequences of his own negligence."

Smith would have us interpret this statement to mean that general words of indemnity can only be used to exonerate the indemnitee for liability for his own negligence when the parties have contracted as to some *specific operation or instrumen-*

*tality.* Smith argues that the phrase "operations of the Contractor hereunder" found in Sec. 15 of the contract is not a specific operation. Consequently, it is urged that since no specific operation has been set out, then this court should refuse to give effect to that paragraph. We disagree. The general rule in this state has not been so restricted by the Friedman case.

In the Friedman case, the owner of a building entered into a 10-year lease contract, and the indemnity clause provided:

"* * * *Lessor shall not be liable* to Lessee or to Lessee's * * * patrons, or visitors, *for any damage to person* * * * *due to the building* on said premises *or any appurtenances thereof being improperly constructed*, or being or becoming out of repair, nor for any damages from any defects or want of repair of * * * the building of which the leased premises form a part * * *."

The plaintiff was injured by falling plaster and lathing, and in his suit against the owner-lessor, original lessee, and sublessee it was alleged that the air conditioning ducts, the plaster and lathing surrounding same and the ceiling were negligently constructed. The owner-lessor filed a cross action against the original lessee for indemnification. This court held that the original lessee was obligated to indemnify the owner-lessor under the terms of the contract even though general words of indemnity were used.

The holding of the Friedman case was based on the decisions in James Stewart & Co. v. H. B. Mobley, supra; and Houston & T. C. R. Co. v. Diamond Press Brick Co. supra, and the language of the Friedman case must be analyzed in the light of these decisions. In the Stewart case the plaintiff was injured when a hoist upon which he was riding fell. Part of the indemnity provisions of the contract did expressly pertain to the operations of the hoist, and the subcontractor did agree to hold the contractor harmless from any and all suits brought against the contractor for any injury that resulted from the use of hoists. The court rejected the contention of the indemnitor subcontractor that the "express negligence" doctrine should be applied, and held that the subcontractor must indemnify the indemnitee contractor for the liability that resulted to the contractor from the contractor's negligent operation of a hoist. Though the case does involve a specific instrumentality, the Court did not place its holding on the ground that the "express negligence" doctrine was avoided because the part of the contract upon which the indemnity was predicated related to a specific instrumentality.

The landmark case in this area is Houston & T. C. R. Co. v. Diamond Press Brick Co., supra. In that case the indemnitee Railroad agreed to construct, maintain and operate a spur track for the indemnitor Brick Company. In the contract the Brick Company agreed:

"* * * to save the (Railroad) harmless from any and all claims for damages *arising from any cause whatsoever* growing out of the construction, maintenance, and operation of said spur track * * *."

The Railroad was found liable in a suit by a person who was injured due to the Railroad's negligence in maintaining the track at a public crossing. Indemnity was allowed the negligent indemnitee Railroad under the generally worded indemnity provisions of the contract even though no specific operation or instrumentality, i. e., the public crossing, was set out in the indemnity clause.

Smith cites the case of Westinghouse Electric Corp. v. Childs-Bellows, Tex.Civ. App. (1961), 352 S.W.2d 806, wr. ref., in support of his contention that general words of indemnity will not free the indemnitee from liability from his own negligence unless such intent is clear, and the indemnity clause relates expressly to some specific operation or instrumentality. In the Childs-Bellows case, supra, the indemnitor, West-

inghouse, had a subcontract to install elevators in an office building being constructed by the indemnitee, Childs-Bellows. In two separate accidents two Westinghouse employees were injured, and suit was brought against Childs-Bellows. A settlement was reached, and Childs-Bellows sought and was denied indemnity from Westingthouse. Westinghouse had agreed only to indemnify for " * * * personal injury, growing out of, or incident to or resulting from the performance * * * [of] the Work * * * " of installing elevators. Indemnity was denied because the *injuries resulted from causes which had absolutely no connection with the work undertaken by Westinghouse.* The Court concluded that the indemnity provision in question " * * * does not show an intent by the parties to indemnify Childs-Bellows for injuries to persons resulting from work which was under the exclusive jurisdiction of Childs-Bellows as general contractor." This case is clearly distinguishable from the case at bar. *Here, Smith agreed to indemnify Ohio for all claims for injury to any person arising directly or indirectly from the workover operations, and the injuries did result from the work undertaken by Smith.*

■■ In our opinion the intent of the parties as expressed in unambiguous words of indemnity, controls the determination of whether the indemnitee is to be relieved from liability for his own negligence. It cannot be said that this rule is limited to instances wherein the parties specify one or more operations or instrumentalities to be used in carrying out their obligations under a contract. In such cases indemnity may be awarded. James Stewart v. H. B. Mobley, supra, Mitchell's v. Friedman, supra. However, it may also be awarded in cases such as this where the intent is clear that such result is to be had as to any injury or damage that arises in the course of the effectuation of the object or objectives of the contract. Houston & T. C. R. Co. v. Diamond Press Brick Co., supra. See also: Smoke v. Turner Construction Co.,

D.C., 54 F.Supp. 369; Russell, for use of Continental Cas. Co. v. Shell, 339 Ill.App. 168, 89 N.E.2d 415; Buffa v. General Motors Corporation, D.C., 131 F.Supp. 478; Turner Construction Co. v. Belmont Iron Works, D.C., 158 F.Supp. 309; Stern v. Larocca, 49 N.J.Super. 496, 140 A.2d 403; Metropolitan Paving Co. v. Gordon Herkenhoff & Associates, 66 N.M. 41, 341 P.2d 460; Northern States Co. v. A. Finkle & Sons Co., 8 Ill.App.2d 419, 132 N.E.2d 59; Bounougious v. Republic Steel Corporation, 7 Cir., 277 F.2d 726.

In the case at bar the distinction drawn by the Court of Civil Appeals in regard to the propriety of the application of the "express negligence" doctrine in cases involving indemnity agreements between owners and contractors was based on the observation that in such instances "[t]he work to be performed seldom consists of a *single* 'specified instrumentality' or of a *single* 'specified operation.'" Based on this distinction the court concluded that in cases involving owner-contractor agreements, where the specific operations or instrumentalities are not set out in the indemnity clause, the "express negligence" doctrine is to be applied.

The "express negligence" doctrine has, in effect, been rejected in this state not only in instances involving the rental or leasing of property, but also in cases where an owner-contractor relationship exists. See: Houston & T. C. R. Co. v. Diamond Press Brick Co., supra. In regard to the distinction drawn, we can see no reason why the Courts should not apply the same rules of law and construction to written contracts between owners and contractor as are applied to any other business contract when intent is just as clearly expressed. In owner-contractor situations judicial construction of indemnity clauses to cover the indemnitee's negligence notwithstanding absence of an express provision to that effect in the contract has been said to be common. See: Stern v. Larocca, supra.

## Strict Construction
### (*Strictissimi Juris*)

The Court of Civil Appeals has held that in owner-contractor situations the scope and extent of the indemnity clause of the contract should be more strictly construed than would be the case if the indemnity clause was one involving a contract for the rental or lease of a building or equipment. Smith contends that the parties did not intend that Ohio would be indemnified for liability arising out of its own negligence, and that the words of Sec. 15 are so broad that it renders the intent of the parties unclear. It is argued that in such cases the doctrine of strictissimi juris is properly applied. Further, if a narrow interpretation is given to Sec. 15 the provision will not hold Smith liable for Ohio's negligence.

Ohio contends that the intent of the parties is clear, and that in such instances ordinary rather than strict rules of construction are to be applied. It is asserted that the Court of Civil Appeals has erred in construing this contract in an artificially strict manner against the indemnitee. We agree with Ohio.

 The doctrine of strictissimi juris is not a rule of construction to be used in the determination of intent in a contract of indemnity. The words of the contract, as reflective of intent, are to be construed by the application of ordinary rules of construction. It is only after the intent has been determined that the doctrine of strictissimi juris is applicable to prevent the liability under the contract from being extended beyond the terms of the agreement. Mitchell's v. Friedman, supra; James Stewart & Co. v. Mobley, supra; See also: Crews Well Service v. Texas Company, Tex.Civ.App. (1962), 358 S.W. 2d 171, wr. ref. n. r. e.; Humble Oil & Refining Company v. Wilson, Tex.Civ.App. (1960), 339 S.W.2d 954, wr. ref., n. r. e. Indemnity agreements between owners and contractor are not more strictly construed than such provisions in other business agreements.

### Intent of the Parties

 Section 15 of the contract embodies the manifestations of the intent of the parties in regard to indemnity. Though broad words are used, they are not to be strictly construed, for the intent alone, as expressed in the words of indemnity, controls the scope of the coverage. The Court of Civil Appeals held that the indemnity provision of the contract is not broad enough to cover claims and damages caused by the sole negligence of Ohio. We disagree.

 It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the courts, in construing that writing will give effect to the intention of the parties as expressed or apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. See: Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617, 620; See generally: Williston on Contracts § 610; Restatement of the Law of Contracts, § 230. Applying these rules to the construction of Sec. 15, it is clear that Ohio is entitled to indemnity from Smith even though it was Ohio's negligence that resulted in Hunt's injury.

Smith agreed to "* * * save and hold harmless Ohio from and against any and all claims and damages of *every kind*, for injury to * * * any person * * * arising out of or attributed, *directly or indirectly* * * *" to his operations under the contract. Hunt's injuries may certainly be attributed to Smith's operations, and the indemnity provision makes reference to the objective of the contract. When the indemnitor has agreed to save and hold harmless the indemnitee from liability for any and all claims and damages of every kind attributed directly or indirectly to his operations under the contract, the in-

demnitee may have recovery over and against the indemnitor for all reasonable expenses incurred in defending or settling the claim asserted against him.

Since we have concluded that the words of Sec. 15 are determinative of this appeal, we need not consider the application of Sec. 17, supra, to the facts of this case, nor the issue raised as to the propriety of the action of the Court of Civil Appeals in rendering judgment for Smith when no motion for summary judgment had been filed by him in the trial court.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.