**Henry FENN et ux., Appellants,**

**v.**

**ESTATE of S. B. BURNETT et al., d/b/a Tom L. Burnett Cattle Company, Appellee.**

**No. 16749.**

Court of Civil Appeals of Texas.

Fort Worth.

June 24, 1966.

Taylor Gandy, Fort Worth, and Peter Chase Neumann, Tucson, Ariz., for appellants.

Cantey, Hanger, Gooch, Cravens & Scarborough, and Sloan B. Blair, Fort Worth, for appellee.

## OPINION

RENFRO, Justice.

The plaintiffs, Mr. and Mrs. Fenn, were owners of a race horse named Manor Man, valued by them in their petition at $250,000.00. After Manor Man had gained renown as a racer he was leased to defendant Burnett Cattle Company for a two year period for breeding purposes. The lease price was $10,000.00, which was paid by defendant to plaintiffs.

After Manor Man had been in defendant's possession for approximately three months he died following the injection of iron dextran in his blood stream by one of defendant's employees.

Plaintiffs sued defendant for the value of the horse, and also for the value of one of plaintiffs' young colts which was found dead on defendant's ranch. Negligence was alleged on the part of defendant.

The defendant moved for summary judgment, which was granted.

Made a part of the pleadings before the judge was the written lease contract between plaintiffs and defendant. Paragraphs 5 and 7 read as follows:

"5. During the term of this lease or any extended term, Lessor shall have the right to breed four of his own mares to the Horse per year. If Lessor desires to exercise such right, he shall at his own expense bring such mares to whatever place such Horse may be located, and Lessee will not be responsible for failure of such mares to conceive, and will not be liable for loss or death of such mares or their colts, if any, while in Lessee's possession. Lessor shall, at his own expense, pick up and accept delivery of such mares and their colts, if any, at weaning time at such place as they may be then located."

"7. During the term of this lease and any extended term, Lessee agrees to provide for the Horse substantially the same care and treatment, including veterinary services, as it provides for its own horses, but in no event shall Lessee be responsible or liable for any loss, theft, injury or death of the Horse, and Lessor agrees to look solely to insurance, if any, which Lessor may at his own expense carry on the Horse."

Plaintiffs filed a controverting affidavit in which they swore that it was not their intent to excuse defendant of its own negligence.

On appeal they contend the court erred in rendering judgment against them (1) because there was a genuine issue of fact regarding the intent of the parties to the lease, and (2) the exculpation clause did not conform to the law of the jurisdiction in that it did not mention the word "negligence" nor did it say the defendant would not exercise ordinary care toward plaintiffs' horses.

It is apparent the trial court entered judgment for defendant under the following reasoning:

"* * * under the plain and unequivocal terms of paragraphs five and seven of the lease agreement in question, the plaintiffs are barred from a recovery for loss of the stallion and colt described in their petition.

"The language of paragraph seven is definite and particular and creates no ambiguity in itself or when taken in connection with other provisions of the agreement. Addition of the word 'negligence' would merely serve to emphasize the language used. The intent of the parties is clear and obvious. The lessee agreed to provide the stallion with the same care and treatment, including veterinary services, as it provided for its own horses, but in no event would the lessee be liable for any loss, whether by theft, injury or death of the stallion, it being agreed that in the event of any of the above named contingencies, the lessor would look solely to his insurance for reimbursement. The fact that the lessor may have let his insurance lapse or that the insuror might have some defense to an action on the policy by reason of some particular exclusion can not be considered by the court in this action. These were matters entirely under the control of the lessor. Since there is no ambiguity in the language of paragraph seven, extraneous evidence is not admissible to show intent of the parties.

"As a general rule, a bailee for hire is liable for loss or damage to the property resulting from his negligence, but an agreement that such loss or damage shall be satisfied solely out of the bailor's insurance is proper and does not contravene public policy.

"While paragraph five regarding the colt does not mention insurance, it is equally plain and unambiguous in its terms.

"If these clauses were intended to cover only injury or losses which might occur without negligence on the part of the lessee, such as calamity or act of God, such provisions would serve no useful purpose, because no liability would result in such in-

stances in any event. As a matter of fact, injury or loss resulting from the bailee's negligence is the only contingency to which paragraph seven can be properly applied. Actually, the bailee's negligence is the sole subject matter of the provision in question, because the opening lines of the section simply require the bailee to exercise ordinary care, which is the test of negligence or lack of negligence. The same sentence then continues on and provides 'but in no event shall the lessee be responsible or liable.' The conclusion of the sentence contains the agreement of the parties that the lessor shall look solely to his insurance, if any, for reimbursement in the event of a loss.

"This case is readily distinguishable from the cases wherein the bailee seeks to limit his duty to exercise ordinary care by arbitrarily posting notices of non-liability for loss or damage to the property placed with him. The holding in such cases usually turns on the question of whether the bailor has assented or agreed to the limitation of liability. In the case at bar the parties not only agreed to waive every kind of claim for loss during the bailment, but also provided for the only method by which the bailor would be reimbursed in the event of a loss. The parties clearly intended to substitute a special contract in lieu of the usual liability of a bailee."

The authorities support the court's conclusions.

■ In construing contracts we must seek the intention of the parties from the language used in the contract. All of the language used is to be considered. Too, consideration may be given to the subject matter of the contract and the surrounding facts and circumstances, not for the purpose of varying or adding to the contract but in order to find out the intention with which words are used. Spence & Howe Construction Company v. Gulf Oil Corporation, 365 S.W.2d 631 (Tex.Sup., 1963); Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617 (1954).

■ The language used in the contract clearly shows the intent of the makers to be that defendant would not be held liable for damage or death of the horse but on the contrary defendant was to be exempt from liability for negligence, and that plaintiffs would look only to their insurance for damages in case anything happened to the horse.

Being clear and unambiguous, parol evidence was not admissible to show a different intent.

■ Contracts written or construed so as to allow indemnity for liability arising out of the indemnitee's own negligence are not violative of the public policy. Northern Texas Traction Co. v. City of Polytechnic, 236 S.W. 73 (Tex.Com.App., 1922); James Stewart & Co. v. Mobley, 282 S.W.2d 290 (Dallas Tex.Civ.App., 1955, ref.). While the intent to indemnify against the results of the indemnitee's negligence must be clear, it need not be expressed. Ohio Oil Company v. Smith, 365 S.W.2d 621 (Tex. Sup., 1963); Houston & T. C. R. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204, 226 S.W. 140; Northern Texas Traction Co. v. City of Polytechnic, supra; James Stewart & Co. v. Mobley, supra; Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957).

The "express negligence" doctrine has, in effect, been rejected in this state not only in instances involving the rental or leasing of property, but also in cases where an owner-contractor relationship exists. Ohio Oil Company v. Smith, 365 S.W.2d 621 (Tex.Sup., 1963).

The parties had a legal right to agree that defendant "in no event" would be liable for the death of the horse. They did so agree.

■ We agree with the trial court that defendant is not liable for the death of the colt under the provisions of paragraph 5, and is not liable for the death of the horse under paragraph 7 of the contract.

Affirmed.