**R. C. HARDY et al., Appellants,**

v.

**Clovis A. MARTIN, Appellee.**

**No. 7928.**

Court of Civil Appeals of Texas.

Texarkana.

Feb. 25, 1969.

Rehearing Denied March 25, 1969.

**390**

Talbert, Giessel, Barnett & Stone, Houston, Carney & Mays, Atlanta, Wheeler, Watkins, Hubbard, Patton & Peek, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellants.

Joe W. Lovelace, Linden, Charles Thompson, Atlanta, for appellee.

CHADICK, Justice.

In the town of Atlanta, Texas, Mr. R. C. Hardy owned two lots located at the intersection of Hiram and Northeast Streets. A two-story brick commercial building was situated on the Hardy lots fronting toward Hiram. A one-story brick store building facing Northeast Street owned by Mr. Clovis A. Martin occupied a lot adjacent to the Hardy lots. The rear wall of the Hardy building abutted a side wall of the Martin structure. On the night of October 31, 1966, the Hardy building burned. A front and much of a side wall of the two-story structure collapsed, but of importance here the rear wall abutting the Martin building remained upright. The fire smouldered for several days while Mr. Hardy sought out and negotiated with several persons in an effort to have the standing walls dismantled and the debris left by the fire removed from his lots.

The city Fire Marshal wrote Mr. Hardy a letter on November 4, 1966, advising him that the standing walls constituted a hazard to public safety, and stated that, "If the hazards are not removed immediately, I will, as City Fire Marshal, begin proceedings to condemn the property". Mr. Martin continued his effort to employ someone to dismantle the walls and remove the debris. He was unsuccessful until November 7th, when he entered into a written contract to that end with Dewey L. Mercer of Shreveport, Louisiana, doing business as Mercer Home Care Service. The night of November 9th, 1966, an upper part of the wall adjoining the Martin building fell onto and considerably damaged Martin's building.

In a suit in the district court of Cass County the jury found collapse of the wall and resultant damages were proximately caused by Mr. Hardy's negligence, and Martin was awarded damages of $8,000.00. The jury did not find Dewey L. Mercer negligent in any respect. Appellant Hardy's appeal brief contains five points of error. Decision on the first point becomes immaterial as a result of the construction this court places upon a contract between

Hardy and Mercer and will not be discussed. The second point of error is sustained. The last three points are concerned with the absence or weight and preponderance of evidence; each is overruled. The point sustained is in this language: "The court erred in not granting indemnification to defendant Hardy against defendant Mercer". Settling this point requires a construction and interpretation of the written contract between Hardy and Mercer to determine whether or not these parties agreed that Mercer would indemnify Hardy against payment of damages proximately caused by Hardy's negligent failure to shore up or remove the wall before the date it fell and damaged Martin.

The contractual content of the contract between Hardy and Mercer with paragraph numbers added for facility in discussion is as follows, to-wit:

"(1) This agreement entered into by and between R. C. Hardy, of the County of Cass and State of Texas, hereinafter called Party of the First Part, and Dewey L. Mercer, doing business as Mercer Home Care Service, of the City of Shreveport, Caddo Parish, Louisiana, hereinafter called Party of the Second Part, witnesseth:

"(2) Party of the First Part is the owner of two lots situated on the corner of Hiram Street and North East Street in the City of Atlanta, Texas, which recently burned and left brick walls standing around some of the property together with a combination of lumber, brick and rubbish on the ground.

"(3) Party of the First Part does hereby grant, demise and give unto Party of the Second Part the right to remove all brick walls, lumber, tin, fallen brick and other material situated on said lots on the terms and conditions set out hereinafter.

"(4) Party of the Second Part agrees that he will remove the brick walls, tin, lumber and all other materials which was left on the above described lots after the fire destroyed the buildings and will have same removed within ninety (90) days from date hereof or less. Party of the Second Part agrees that he will remove only that portion of the east wall which belonged to the building owned by R. C. Hardy, and it is the upper part of the east wall which will run approximately three (3) windows back from the building owned by Dr. James Brooks.

"(5) Party of the Second Part agrees that he will be in full charge of the removing of the material, bricks and other substances off the lots and that he, his agents and servants will be liable and responsible for all damage done to other property adjoining the property of the Party of the First Part and shall be responsible and liable for any damage done to any person that might be injured while said material is being removed.

"(6) Party of the First Part does hereby give and grant to Party of the Second Part the exclusive right for he and his employees to remove said brick walls and other material off of said lots, and the Party of the First Part shall have no say-so as to how it is removed.

"(7) Party of the Second Part agrees that he will clean up all the rubbish and other material off of said lots and after he has removed the brick walls and other substances thereon he will leave the lots in a clean condition suitable to rebuild on by anyone so desiring to build a new building thereon.

"(8) Party of the Second Part agrees that he will assume all liability of removing the brick walls, fallen bricks, lumber and other substances on the lots and hereby assumes all risk involved therein to other property or persons while same is being removed.

"(9) Witness our hands this the 7th day of November, 1966."

■  The purpose of the contract, it may be gathered from the entire instrument, was to effect removal of the standing walls and rubble from Hardy's lots, in considera-

tion of title to salvable material vesting in Mercer. It is clear the parties intended the contractual rights and obligations of the agreement were to vest and begin on the date the instrument was signed. The time of inception and the duration of the contract is shown by paragraphs 4 and 9. Paragraph 4 shows the agreement was to be performed within a period of 90 days from the date of the written instrument; the date is shown by paragraph 9 to be November 7, 1966. That the agreement contemplated the immediate vesting of a special interest in the realty, that is, that the bricks, lumber, etc., salvable from the burnt-out building was to become Mercer's property is to be found in the language of paragraph 3, where it is said: "Party of the First Part does hereby grant, demise and give Party of the Second Part the right to remove all the brick walls, lumber, * * * ", etc. It plainly appears that the parties meant for the contract to be operative from the time it was signed, and to remain effective for 90 days, with Mr. Mercer free to perform his obligations under it at any time within that period. Without exception other provisions of the agreement are functionally in harmony with immediate vesting of the rights and obligations of the parties; none run counter to such an intent.

Paragraph 8 is a general statement of the agreement that Mercer "will assume all liability of removing the brick walls, fallen brick, lumber, and other substance on the lots, and * * * assumes all risk involved therein to other property or persons while the same is being removed". Appellee Mercer argues that the phrase, "while same is being removed", limits his liability and responsibility to injury or damage arising at the actual time material was being "removed" or transported from the lots. Such an interpretation is entirely too narrow; simple transport of debris was not the sole objective of the contract, as paragraph 7 plainly manifests. Paragraph 7, as well as other provisions of the agreement, make it obvious that the parties contemplated the

standing walls would be dismantled (removed in the words of the contract) and the fire-wrought rubble put in manageable condition and then removed or transported from the lots. It is thus apparent the parties meant Mercer was to be liable for damages at times other than when simple removal or transportation of the material was in progress. The intention of the parties was to use the phrase in a broad sense as a way of saying Mercer assumed liability while he performed the contract.

■ ■ In further support of the conclusion just expressed, it is to be seen that in paragraph 5 the parties agreed that, (1) Mercer, to the exclusion of Hardy or anyone else, would be in full charge of removing material, bricks, etc.; (2) Mercer, his agents and servants, would be liable and responsible for all damage done to the property adjoining the Hardy lots; (3) Mercer would be liable and responsible for any damage done to any person injured "while said material is being removed". Clause (2) shows that danger of damage to adjoining property during the term of the contract was contemplated by the parties, and Mercer's liability therefor was specifically agreed upon without qualification. The clause following recognizes the danger of injury or damage to persons while removal work was in progress, and fixed as between the parties, responsibility and liability therefor. It is a familiar rule of construction that general terms appearing in a contract will be overcome and controlled by specific language on the same subject. 13 Tex.Jur. 2d Contracts § 139. The specific provisions of paragraph 5 control the more general terms of paragraph 8, even though the latter paragraph be given the narrow construction appellee Mercer would place on it.

■ To summarize, it appears that the parties intended by the agreement that Mercer would immediately take complete charge of the remains of the fire destroyed building, and would answer to others for damage therefrom that might occur during the period of the contract, even though the damage was proximately caused by Hardy's

negligence in failing to shore up or dismantle the standing walls. Contracts of indemnity for liability arising out of the indemnitee's own negligence do not violate public policy, and where the intent is clear that the parties intended such a result the contract may be enforced. The Ohio Oil Co. v. Smith, 365 S.W.2d 621 (Tex.1963); Mitchell's Inc., v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957); James Stewart & Co. v. Mobley, 282 S.W.2d 290 (Tex.Civ. App.Dallas, 1955, writ ref'd).

Should this court be mistaken in the conclusion that decision on point of error number one is immaterial under this record, for the purpose of further appellate review this court finds the evidence sufficient to support the jury's answer to Special Issue No. 5, the subject of the point. The judgment of the trial court, insofar as it denies appellant Hardy indemnity from Mercer, is reversed, and judgment rendered that Hardy recover of and from Mercer all damages, costs, interest, etc., he may be compelled to pay appellee Martin; the trial court judgment is otherwise affirmed.